637 So.2d 437 (1994)
STATE of Louisiana
v.
Dale Dewayne CRAIG.
STATE of Louisiana
v.
Frank HARRIS.
Nos. 93-KK-2515, 93-KK-2654 and 93-KK-2589.
Supreme Court of Louisiana.
May 23, 1994.
*439 Frank J. Gremillion, Hon. Michael Elven Ponder, Cynthia A. Childress, for applicant.
Richard P. Ieyoub, Atty. Gen., Douglas P. Moreau, Dist. Atty., Thomas C. Walsh, Jr., Frederick A. Duhy, Jr., Barbara B. Rutledge, John W. Sinquefield, Richard M. Upton, George R. Trelles, Marilyn M. Fournet, Robert E. Harroun, III, for respondent.
Debra G. Miller, Louis G. Gruntz, Jr., for Parish of Jefferson amicus curiae.
HALL, Justice.[1]
Applications for writs in these two capital cases were granted and consolidated to determine the proper source of funding for certain expenses associated with indigent defense. We hold that, upon a contradictory showing that the local indigent defender board cannot afford the expenses in question, the district court can order the local government of the parish where the case is being tried to defray necessary expenses surrounding indigent defense, such as the fees of investigators and expert witnesses, first through the criminal court fund, and, should *440 this be exhausted, then through the local government general fund. In these cases, we (1) affirm the judgment of the lower courts ordering the City-Parish government of East Baton Rouge Parish to pay the expenses of expert witnesses, a psychologist and a mitigation expert, and (2) reverse the judgment of the court of appeal ordering the indigent defender board to furnish an investigator and reinstate the judgment of the district court ordering the City-Parish government to pay the cost of an investigator.

I.
The defendants in these factually unrelated cases are both charged with first degree murder, a violation of LSA-R.S. 14:30, and the state has announced that it will seek the death penalty in both cases. In the first matter, State v. Dale Dewayne Craig, the trial court initially ordered the East Baton Rouge Office of the Public Defender to provide an investigator or the funds to hire one for the defendant in this case. At a contradictory hearing, the chairman of the Office of the Public Defender ("OPD") stated that none of its investigators could work on the defendant's capital case because their case load was too heavy, each investigator being responsible for over 300 active cases. The chairman also testified that the OPD was operating at a deficit and did not have the funds for the hiring of an additional investigator. After the hearing that adduced this evidence, the trial court recalled its previous order that required the OPD to provide an investigator for the defendant. Its next step was to consolidate the Craig case with another capital case, State v. Frank Harris, that involved the same issue of providing assistance for an indigent defendant, and set them both for a hearing concerning which entity would be responsible for the funding of indigent defense experts and investigators. At that hearing, the trial court held that each defendant was entitled to an investigator, a "mitigation expert"[2], and a psychologist. This ruling determining the defendants' entitlement to the assistance of these particular experts is not the subject of any writ application by the state, and the question of necessity and entitlement to the expert assistance is not before this court for review.
At the hearing, while stipulating that it had the monies to pay for the services that the defendants required, the City-Parish of East Baton Rouge argued that it should not be held responsible for the funding of indigent defense. The trial court ruled otherwise, stating that the City-Parish government would be responsible for providing the funds necessary to pay for an investigator, psychologist, and mitigation expert for each defendant. In State v. Craig, the trial court ordered the City-Parish, through the Office of the Treasurer, to deposit a total of $9,000.00 in a court account to cover expenses for an investigator, mitigation expert, and psychologist. A maximum of $6,000.00 was allotted to offset expenses for an investigator and psychologist, and a maximum of $3,000.00 was set aside to offset expenses for the mitigation expert. In State v. Harris, the trial court ordered the City-Parish, through the Office of the Treasurer, to deposit a total of $6,000.00 in a court account to defray expenses of an investigator, mitigation expert, and psychologist.
The City-Parish then sought writs of certiorari, mandamus, and review in the First Circuit Court of Appeal, which were granted in part and denied in part. The court of appeal, in an unpublished order, citing LSA-R.S. 15:304 as controlling authority, upheld the ruling of the trial court and made the City-Parish responsible for the cost of the experts. As to the costs of the investigators, the court of appeal reversed the trial court by ruling that the OPD should furnish the investigative services from its own staff of investigators. The East Baton Rouge Office of the Public Defender then sought writs in this court in Craig and Harris, claiming that it cannot provide the investigative services from its already-overworked staff, and that the funds to pay an additional investigator were not available. The City-Parish of East Baton Rouge sought writs from this court in Craig only, claiming that it should not be *441 responsible for funding indigent capital defense expenses related to a psychologist or mitigation expert. Writs were granted and consolidated for argument before this court. 631 So.2d 432 (La.1994).
The principal issue to be decided is whether the local parish government can be required to pay certain costs and expenses related to the defense of the indigent defendants in these capital cases. Affirming the lower courts on this issue, we hold that upon a showing that indigent defender board funds under LSA-R.S. 15:146 are not available, the local parish government may be ordered to pay such expenses from the Criminal Court Fund pursuant to LSA-R.S. 15:571.11 or its general fund pursuant to LSA-R.S. 15:304. By virtue of LSA-R.S. 15:304 and its predecessor statutes, the legislature has historically placed the responsibility for operating the criminal court system upon parish governments. The cost of indigent defense is a part of the criminal court proceedings and, except to the extent that adequate funding is provided from other sources specifically for the support of indigent defense, the responsibility for the cost thereof remains with the parish.

II.

A.
La. Const. Art. I, sec. 13 is the foundation of the system of indigent defense in the state of Louisiana. It provides, in pertinent part, that
[a]t each stage of the [criminal] proceedings, every person is entitled to assistance of counsel of his choice, or appointed by the court if he is indigent and charged with a crime punishable by imprisonment. The legislature shall provide for a uniform system for securing and compensating qualified counsel for indigents.
In response to this constitutional mandate, the legislature created statutory authority (presently found in LSA-R.S. 15:144, et seq.) for the establishment of indigent defender boards in each judicial district and, to a certain extent, for provision of their funding. LSA-R.S. 15:146 provides that not less than seventeen dollars and fifty cents nor more than twenty-five dollars shall be assessed as costs by the district court upon each conviction for any offense except parking violations, to be allotted to the district indigent defender boards. It further provides that the state "shall pay to each district indigent defender board, on the warrant of its chairman, the sum of ten thousand dollars per annum." However, the $10,000.00 sum to be provided upon the "warrant" of the local chairman has not been appropriated annually by the legislature. Thus, the principal source for funding for indigent defense is assessments of costs for criminal violations, principally traffic tickets.[3]
Although these statutes provide for some funding devoted solely to the indigent defender boards, the present case brings to light elements of the funding scheme's inadequacy. See also State v. Peart, 621 So2d 780 (La.1993), in which the instability and unpredictability of funding through costs assessed primarily on traffic violations is chronicled. For example, in this case, the director of the East Baton Rouge OPD testified that the office was working at a deficit, paying only salaries and rent, with all other bills for expenses being long past due. The local courts had voted to raise the amount of costs to the maximum allowed by LSA-R.S. 15:146 (twenty-five dollars), but the marked decrease in fines collected had actually caused a reduction of the sums available to the East Baton Rouge OPD. Because of the inability of some indigent defender boards, like the one in this case, to meet the expense of providing and compensating qualified counsel for indigents charged with *442 crimes as mandated by the Louisiana and federal constitutions, through the funding scheme established by LSA-R.S. 15:144 et seq., it has become necessary to consider whether other statutes which place responsibility for funding the criminal justice system on local governments include responsibility for funding indigent defense.
LSA-R.S. 15:571.11 sets up a scheme wherein all fines and forfeitures imposed by the district courts, after retention of 12% by the sheriff and remittance of 12% to the district attorney, are to be paid into the parish treasury and then deposited into a special "Criminal Court Fund" account for defrayal of expenses of the criminal courts.[4] The OPD claims that this statute requires the City-Parish, through its "Criminal Court Fund", to bear the expenses associated with OPD's hiring of a psychologist, mitigation expert, and the hiring of additional investigators for an indigent defendant. The City-Parish disagrees with this contention, claiming that the statute has been repealed by implication, and, even should the statute be found to be viable, it requires funding solely for court-appointed attorneys, and not for state-mandated Offices of the Public Defender, as these entities receive funding via LSA-R.S. 15:146, supra.
LSA-R.S. 15:571.11 provides, in pertinent part, that, upon the motion of the local district attorney and approval from the district judge, the monies
may be used or paid out in defraying the expenses of the criminal courts of the parish..., in defraying the expenses of those courts in recording and transcribing of testimony, statements, charges and other proceedings in the trial of indigent persons charged with the commission of felonies, in defraying their expenses in the preparation of records in appeals in such cases, for all expenses and fees of the petit jury and grand jury, for witness fees, for attendance fees of the sheriff and clerk of court, for costs and expenses of a parish law library, for expenses and fees of attorneys appointed to represent indigent persons under any public defender program, and for other expenses related to the judges of the criminal courts and the office of the district attorney.
(Emphasis added.) The statute enumerates several uses to which funds collected can be put, such as for payment of certain court-related administrative expenses (witness and jury fees) and maintenance of a local law library. The statute further delineates many uses to which some of the funds are to be put relating to indigent defendants, such as payment of costs associated with recording and transcribing testimony and other proceedings during their felony trials, and for paying for the preparation of the trial record for their appeals. Further, the statute explicitly states that the funds are to be available to attorneys for indigents to help defray "expenses and fees" incurred. As investigators assist the defense attorney in the gathering of evidence for the defense, and the experts assist the attorney in analyzing and presenting information, it logically follows that monies required to compensate these investigators and experts for their assistance are "expenses or fees" that are necessary to an indigent defendant's attorney for proper preparation of the case, and should fall under LSA-R.S. 15:571.11's ambit.
Past jurisprudence of this court supports this interpretation. This court, in State v. Henderson, 341 So2d 879, 882 (La.1977), has previously interpreted this statute to provide that travel expenses of out of state witnesses for indigent defendants fall within the class of expenses which the legislature intended may be paid from the Criminal Court Fund. The court also stated that, despite the requirement of approval by both the district court and the district attorney, "neither agency of government may arbitrarily refuse to approve a proper expenditure from th[is] ... account." Id. Thus, it appears that, if an expense is found to assist in an indigent's defense, the expense is "proper" and, pursuant to LSA-R.S. 15:571.11, neither the district attorney nor the judge can refuse to approve its payment from available funds in the Criminal Court Fund.
*443 The City-Parish further claims that, should LSA-R.S. 15:571.11 be interpreted to apply to indigent defense funding, it should be limited to funding for court-appointed indigent defense attorneys, and may not be used for OPD expenses associated with the defense of indigents, as those expenses should be included in the OPD budget. Apparently, the City-Parish wishes this court to distinguish ad hoc court-appointed attorneys from those attorneys representing indigents for the OPD. The City-Parish is incorrect in this differentiation, as all attorneys representing indigents are "appointed" by the court, whether employed or affiliated with OPD or not. LSA-C.Cr.P. arts. 511-513; LSA-R.S. 15:145. The statute makes no such distinction.

B.
The City-Parish's next contention is that, even should LSA-R.S. 15:571.11 be found otherwise applicable, its provisions concerning indigent defense funding have been repealed by implication. This "implied repeal" allegedly occurred when the legislature passed the funding provisions set forth in LSA-R.S. 15:146 (discussed supra) two years later. We find this argument to be without merit.
Repeals by implication require a determination of whether there is some indication of a legislative "intention to repeal" the statutes in question. State v. Randall, 219 La. 578, 53 So.2d 689, 691 (1951). Such implied repeals are "not favored and will not be indulged if there is any other reasonable construction." State v. Standard Oil of La., 188 La. 978, 178 So. 601, 626 (1973). A repeal by implication requires "nothing short of irreconcilable conflict between two statutes." Id.
Since the enactment of LSA-R.S. 15:146, the legislature has amended LSA-R.S. 15:571.11 fifteen times. Nowhere in these amendments has the legislature removed the portions dealing with indigent defense funding. Obviously, this shows that the legislature has had the opportunity to delete the provisions in LSA-R.S. 15:571.11 regarding indigent defense funding, but has apparently chosen not to. Further, there is no "irreconcilable conflict" between the two statutes that both deal with indigent defense funding; they can be reasonably construed to harmonize with each other, as one sets forth a general source of funding, and the other sets forth a specific manner of funding local boards. LSA-R.S. 15:571.11 sets forth the general duty of the parish to devote monies raised from fines to, among other things, the "fees and expenses" associated with indigent defense, and LSA-R.S. 15:146 sets forth additional costs assessed upon convictions to be dedicated exclusively to indigent defense. Thus, in the absence of any legislative intent to repeal or any irreconcilable conflict between the statutes, we find that the claim by the City-Parish that the indigent defense funding requirements of LSA-R.S. 15:571.11 have been repealed by implication is without merit.

C.
The City-Parish next draws our attention to collateral matters that it posits as exempting it from the onus of indigent defense funding. First, the City-Parish states that, in East Baton Rouge Parish, there is no specific "Criminal Court Fund" from which these sums can be drawn. This court is in agreement with the court of appeal in its statement that the "[City Parish] cannot avoid this responsibility [for indigent defense funding] because it technically has no designated criminal court fund", as most of the collected monies go directly into the parish treasury.[5] LSA-R.S. 15:571.11 is mandatory in requiring the parish to set up a "special account" into which all fines and forfeitures are to be deposited, as evidenced by the statute's use of the word "shall" in describing this responsibility. The legislature has ordained that the parishes of this state shall have a duty to create this account, and the failure of this particular parish to specifically do so should not exempt it from the legislatively-designated responsibility to properly disburse these funds, and we hold that it does not.
*444 Next, the City-Parish points out that the monies raised through this fund are insufficient for any indigent defense funding, and that this court should next look to the judicial expense fund. The City-Parish established that its intake from fines and forfeitures was insufficient to offset the actual costs of operating the criminal courts in the parish.[6] Since the Criminal Court Fund, even if it actually existed per se, could not possibly defray the costs of the experts in this case, the City Parish claims that the monies must come from some other fund, namely the 19th Judicial District Judicial Expense Fund.[7]
LSA-R.S 13:991 establishes an account known as the Judicial Expense Fund consisting of costs not to exceed $15.00 in each civil suit and $5.00 in each criminal case before the 19th Judicial District Court. Section 992 mandates how the funds are to be disbursed, and provides in pertinent part that,
[i]n general, the judicial expense fund is established and may be used for any purpose or purposes connected with, incidental to or related to the proper administration or function of the said court or the offices of the individual judges and is in addition to any and all other funds, salaries, expenses, or other monies that are now or hereafter provided, authorized, or established by law for any of the aforesaid purposes.
(Emphasis added.) The statute provides that administrative costs are to be paid out of this dedicated fund, and outlines some of the type of costs that are "administrative" so as to "expedite the business and function of the court", such as salaries for secretaries, court reporters, clerical and research assistants, the monies needed to fund a library, and funds needed to purchase proper equipment for the court. In short, this statute evinces a legislative intent to allow for funding of the court's administrative day-to-day operating expenses, and does not show a legislative intent for this fund to bear the costs of indigent defense. Therefore, we hold that this fund is, in this particular case at this time, not needed to pay for expenses associated with indigent defense.
This is not to say, however, that this fund could never be used to assist in paying expenses surrounding indigent defense. LSA-R.S. 13:992 states that
the judges [of the Nineteenth Judicial District], en banc, may utilize the monies in the judicial expense fund to pay all or part of the cost ... [of] items consistent with or germane to the efficient operation of the court. In general, the judicial expense fund is established and may be used for any purpose or purposes connected with, incidental to, or related to the proper administration or function of the said court....
(Emphasis added.) The statute provides that, should the judges of the district decide, en banc, that a given expense (such as funding for indigent defense) is one "connected with, incidental to, or related to the proper... function of the said court", then the expense could be paid from these funds.
There are, however, other statutory commands from the legislature regarding sources for funding of indigent defense, one of which was relied upon by the district court and the court of appeal to find that the City-Parish is responsible for the expenses incurred by the use of expert witnesses, namely LSA-R.S. 15:304, the general statute which places responsibility upon parish governments for funding the expenses of criminal proceedings. The availability of this source of funding for this type of expense, and for the expenses surrounding the hiring of additional investigators, will now be discussed.

III.

A.
At the outset, we point out that prior decisions of this court have explicitly recognized *445 our power to act in the area of determining the amount, priority, and source of funding where the constitutional rights of an indigent to a proper defense are concerned. This power was hinted at in State v. Campbell, 324 So2d 395, 398 (La.1975), where this court stated that it would not decide that, if "appropriate circumstances" presented themselves, the judiciary lacked "the power to require a particular subdivision, or the State itself, to provide for payment of necessary expenses, including counsel fees, for the trial of indigent defendants." Two years later, this court reiterated this statement in Henderson, supra, by declaring that, just because the funds requested in that case had turned out to be available from other sources, it did not mean that the judiciary "would lack the power to require a particular agency or fund, or the State itself, to provide for payment of necessary expenses for the trial of indigent defendants." 341 So2d at 882.
In State In the Interest of Johnson, 475 So2d 340, 342 (La.1985), we stated that the failure of a co-equal branch to properly designate and appropriate a fee for indigent defense counsel did not prevent same from being obtained by court order:
even in the absence of legislative or executive authorization, a court may, when reasonably necessary, appoint counsel for an indigent and award the attorney a reasonable fee to be paid from a source which the court deems appropriate,
noting that this was a proper exercise of the court's inherent powers under the state constitution. In the instant case, we can see no reason to differentiate the need for payment to an indigent's attorney from the need for payment of investigators and experts who assist that attorney, since, as discussed earlier, these persons assist the attorney in the preparation of an effective defense and help to make the attorney "reasonably effective." State v. Peart, 621 So2d 780, 783 (La.1993).
Johnson also set forth guidelines to assist a court in its determination as to the extent and nature of responsibility for indigent funding, stating that "a court must act with comity toward the other branches of government and with sensitive regard for the concepts of functional differentiation and the checks and balances implied by the separation of powers doctrine." Id., at 342. This recognition of the judiciary's limited experience in determining matters of budgetary priority was accompanied by a list of factors that would serve to assist a court dealing with this matter, involving an examination of
the structure and scheme of existing legislation which may be applied by analogy, the ability of an entity to budget and finance such expenditures, the entity's responsibility for incurring the need for legal services or for administering the program out of which the need arises, and the existence of any custom or informal practice regarding the payment of such fees.
Id. Using these factors as a sort of guide, it would appear that the responsibility for the funding of expenses associated with indigent defense lies with the City-Parish.
The "existing legislation" in this case is found in LSA-R.S. 15:304, which provides, in pertinent part, that
[a]ll expenses incurred in the different parishes of the state or in the city of New Orleans by the arrest, confinement, maintenance and prosecution of persons accused or convicted of crimes, their removal to prison, the pay of witnesses, jurors, and all expenses whatever attending criminal proceedings shall be paid by the respective parishes in which the offense charged may have been committed or by the city of New Orleans, as the case may be....
(Emphasis added.)
The court of appeal held that, at least as far as expert witness fees go, this statute "place[s] responsibility for trial expenses with the parish", and, implicitly, the court found that, as these witnesses were necessary for the indigent's defense, they constituted an "expense" of the trial and were therefore a responsibility of the City-Parish. The City-Parish claims that this was error, asserting that § 304 exists only to clarify which parish (in a multi-parish situation) is to pay costs of lodging of witnesses and maintenance of the defendant in jail, and does not serve as a means to insist that each parish *446 defray the costs of an indigent's defense for trials in that parish. This position squarely contradicts our recent holding in State v. Wigley, 624 So2d 425 (La.1993). In dealing with possible sources for compensation for indigent defense counsel, we stated that
[w]e fully appreciate that the sources of funds from which appointed counsel may be reimbursed are limited. In future cases it will therefore be the district judge's responsibility to determine before he appoints counsel that funds sufficient to cover the anticipated expenses and overhead are likely to be available to reimburse counsel in the manner outlined above, whether the funds come from the Indigent Defender Board, from the state, from one court fund or another, from the local government subdivision pursuant to La.Rev.Stat.Ann. § 15:304, or from any other available source.
Wigley, at 429. (Emphasis added.) This statement obviously recognized that § 304's use of the words "all expenses incurred" in its delineation of parish responsibility was broad enough to include necessary expenses incurred by an indigent defendant in the maintenance of his case. Also, in State v. Peart, supra, this court in discussing funding of the indigent defender system, noted LSA-R.S. 15:304 as a general statute which directs parishes to pay for the administration of the criminal justice system, and held that this statute along with LSA-R.S. 15:145 and 146 do not unconstitutionally burden the state's political subdivisions by requiring that they fund the indigent defender system. Thus, our most recent jurisprudence has clearly held that LSA-R.S. 15:304 is a proper source for indigent defense funding, and we feel no need to deviate from this path at this time.
The "entity" in this case, the City-Parish, has stipulated that it has the funds (in its general operating fund) to cover the expenses that the trial court ordered paid, so its ability to finance the expenditures is not at issue in the instant case. The parish is not directly responsible for the incurring of the fees, but it does customarily assist the OPD in payment of some of its expenses, such as health insurance benefits for its employees and a total of $15,000.00 each year to supplement rent.[8] Thus, as the majority of the Johnson factors have been satisfied, we hold that LSA-R.S. 15:304 places general responsibility for the payment of indigent defense fees at the feet of the City-Parish. However, before these monies are ordered disbursed, more than a mere request for funding is necessary.

B.
We are well aware of the potential for abuse that an indigent's untrammeled right to funding could create. As the United States Supreme Court held in Ross v. Moffitt, 417 U.S. 600, 612, 94 S.Ct. 2437, 2444, 41 L.Ed.2d 341 (1974), an indigent is not entitled to funds to provide any evidence or assistance that he wishes, but only those which will provide indigents "an adequate opportunity to present their claims fairly within the adversary system." We find that, before these funds are to be made available, some sort of hearing before a court must take place on the issue of the necessity of evidence and the OPD's inability to come up with the funds needed to obtain it, with the court taking into account the guidelines set forth in Moffitt, above, as a basis for determination of an indigent's need for the assistance.
This is no new requirement, as we have previously explored this issue. In State v. Madison, 345 So2d 485 (La.1977), we stated that,
when an indigent defendant shows that his attorney is unable to obtain existing evidence crucial to the defense, the means to obtain it should be provided for him, and if the indigent defender system cannot defray the expense, the State ought to supply the funds.
Id., at 490. In that case, the indigent failed to make the requisite showing, but, regardless of that failure, a procedure was put into place. We now revitalize this holding to require that, when an indigent defendant wishes funding for the production or gathering *447 of any evidence, testimonial or physical, he should be required to make a showing of its necessity and the local indigent board's inability to pay.[9] The trial court should be guided by the dictates of fundamental fairness that require an indigent defendant to be equipped with the "basic tools of an adequate defense." Britt v. North Carolina, 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400 (1971). See also Caldwell v. Mississippi, 472 U.S. 320, 324, n. 1, 105 S.Ct. 2633, 2637, n. 1, 86 L.Ed.2d 231 (1985), and Ake v. Oklahoma, 470 U.S. 68, 78, 105 S.Ct. 1087, 1093, 84 L.Ed.2d 53 (1985). In the instant case, this requisite showing was made. The trial court held a hearing where witnesses from the OPD testified as to the need for and the lack of funding to support an additional investigator. The trial court, apparently finding this testimony to be credible, held that the additional investigator and experts were needed, and that the OPD was unable to furnish or pay for this additional investigator.
The court of appeal apparently reversed this finding of fact by the trial court, stating that investigators being "busy" was insufficient grounds for the OPD's failure to assign them to a capital case and that there was no justification for defendant's "needing" an additional investigator. We hold that this reversal was improper, as the trial court's finding of fact in this instance was not manifestly erroneous or a clear abuse of discretion.

C.
In a criminal trial, the trial court findings of fact are "entitled to great weight." State v. Lodrige, 414 So2d 759, 762 (La.1982); State v. Overton, 337 So2d 1058 (La.1976). This deference is expressed in the rule that a trial court finding of fact is "not to be disturbed on review unless clearly contrary to the evidence." State v. McSpaddin, 341 So2d 868, 872 (La.1977). The court of appeal reversed a finding of fact made by the trial judge, and, as the finding was well-supported by evidence adduced at the trial court, this reversal was error.
The record shows that the reasons for the inability of the OPD to assign an investigator to these capital cases were not as frivolous as the court of appeal implied. The chairman of the local indigent defender board testified that the case loads of the investigators assigned to the OPD were incredibly heavy, with each investigator being responsible for over 300 cases. The chairman then stated that
[h]aving some experience in capital defense, knowing what an investigator is going to have to do, I don't think that it's possible for an investigator from the public defender's office to be assigned to a capital case and also work a case load, a regular, normal, case load.
The trial court apparently gave this testimony much weight, and decided that the particular pressures of capital cases combined with the already-overworked nature of the OPD's investigators created a need for an additional one that was not so overworked. The trial court also found the OPD was operating at a deficit and could not afford one. This finding of fact was supported by the evidence and is not so manifestly erroneous as to justify the court of appeal's substitution of its judgment for that of the trial court on this issue. Therefore, we reverse the finding of the court of appeal that the additional investigator was unnecessary. Thus, since LSA-R.S. 15:304 serves to make the City-Parish generally responsible for the costs associated with indigent defense, we hold that this liability extends, in this particular case, to both expert fees and fees relative to the hiring of an additional investigator.

IV.
While we reiterate our reluctance to interfere with the financial decisions of other co-equal branches of state or local government, the time has come to properly address the crisis created by the lack of adequate indigent *448 defense funding. Although we note that the system is in need of some overhaul, it is not this court's province to explain exactly how this is to be done. The primary responsibility for this falls, instead, upon the legislature, as, under our system of checks and balances, its plenary powers (especially those in the area of fiscal and budgetary matters) encompasses problems such as this. Further, legislative responsibility for this particular area is specifically set forth in La. Const. Art. I, sec. 13, as the legislature must itself "provide" a system for indigent defense. However, the first step in dealing with this not-insurmountable problem involves some entity clearly determining who, under the current legal regime, is responsible for these expenses and to what extent. Given that this involves an interpretation of both the law and the constitution, this is clearly a judicial responsibility.
In our effort to fulfill this responsibility, we need not and do not attempt to involve ourselves in the budgetary affairs of the City-Parish local government in the sense of setting any priorities for the payment of indigent defense costs compared to other necessary expenses of local government. We simply hold that, under the circumstances described above, the legislature has imposed upon the local government the responsibility for these costs and that the court can require the local government to comply with that responsibility on a case-by-case basis. The local government in these consolidated cases has stipulated that it has funds available to defray the expenses in these cases. It would seem that prudent budgetary practices would dictate that all parish governments should plan for and take into account this financial responsibility in their annual budgetary process.
More specifically, we recapitulate our holding in this case to say that, first, the district court has the power to order the City-Parish to cover necessary expenses surrounding an indigent capital defendant's expert witnesses and investigator. However, these funds are to be made available only after a hearing in which both the need for the services and the inability of the local indigent defender board to provide either the services or the funds is established. We affirm the order of the court of appeal in Craig and Harris that requires the City-Parish to pay for expert witnesses, and reverse the order of the court of appeal in both consolidated cases and reinstate the trial court finding of fact and resultant order that the City-Parish provide funding for investigative services as well as for expert witnesses. We have outlined that these funds are to come from, first, the City-Parish Criminal Court Fund (per LSA-R.S. 15:571.11), and should these funds be unavailable from that source, then the funds are to come from the City-Parish general fund (per LSA-R.S. 15:304). We now remand this case to the lower court for proceedings consistent with this opinion.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[1] Calogero, C.J. not on panel. Rule IV, Part 2, § 3. Judge Charles A. Marvin, Chief Judge, Court of Appeal, Second Circuit, sitting in place of Justice James L. Dennis.
[2] A "mitigation expert" is, according to counsel for the defendant, an expert (usually a social worker) who assists in the investigation, preparation, and presentation of relevant mitigation evidence for the penalty phase of trial.
[3] In 1993, the legislature acted to increase the funding to indigent defense. LSA-R.S. 15:571.11 (discussed infra) was amended to require from twenty-to twenty-five percent of local bond forfeitures to be paid to the indigent defense program for the parish where the bond was posted. See LSA-R.S. 15:571.11(L)(iv). Further, LSA-R.S. 22:1065.1(D) was also amended to require that, of the tax charged on premiums for commercial bail bond underwriters in this state, twenty-five percent of the total collected is to be distributed to the state's indigent defense programs. The impact of these additional sources of funding is not reflected in the record of these cases.
[4] LSA-R.S. 15:571.11(D) establishes a different scheme for Orleans Parish, with half of the monies going to the district attorney and half to the criminal district court.
[5] Testimony revealed that the City Parish received $764,482.00 in fines and forfeitures in 1992, of which $581,006.00 went directly into the general fund.
[6] The actual amount collected from fines and forfeitures in 1992 was $764,482.00, of which $581,006.00 went into the parish general fund. The actual cost of operating the criminal courts of Baton Rouge was $5,987,070.00 for 1992.
[7] The Judicial Expense Fund is capable of paying for the experts in this case, as testimony showed that the fund had almost $200,000.00 in surplus, more than enough to compensate the experts and investigators needed in this case.
[8] Testimony in the trial court showed that the City-Parish had, in the past paid some sums toward criminal defense of indigents, but had ceased to do so in 1992.
[9] The issue of whether or not the hearing on necessity should be ex parte is germane to these proceedings, but, as it was not specifically assigned as error by either party, it is not properly before this court at this time. Recently, however, we have granted writs on this very issue in State v. Kevin Touchet, 93-2839 (La. 3/18/94), 634 So.2d 843 (La.1994).