879 So.2d 173 (2004)
STATE of Louisiana
v.
Derrick Todd LEE.
No. 2004 KW 0129.
Court of Appeal of Louisiana, First Circuit.
April 6, 2004.
*175 Clive A. Stafford Smith, Attorney at Law, Counsel for Relator, Derrick Todd Lee.
Doug Moreau, District Attorney, John W. Sinquefield & Dana J. Cummings, Assistant District Attorneys, Counsel for Respondent, State of Louisiana.
Before: WHIPPLE, KUHN and McDONALD, JJ.
PER CURIAM.
Defendant, Derrick Todd Lee, seeks review of the trial court's refusal to issue a ruling on his motion requesting funding for expert expenses. For the following reasons, we grant the writ and remand to the trial court for reconsideration.[1]
The state has indicted defendant with first degree murder and is seeking the death penalty. The court appointed the Office of the Public Defender to represent defendant. Defendant filed a "Touchet motion to proceed in camera and ex parte on privileged matters." In State v. Touchet, 1993-2839 (La.9/6/94), 642 So.2d 1213, the Louisiana Supreme Court established a procedure for trial courts to follow when faced with requests by indigent defendants for funds to pay experts. Defendant alleged in the motion that he needed the services of various experts, laboratories and investigators beyond those on staff with the 19th Judicial District Court Indigent Defender Board, and that the Indigent Defender Board did not have sufficient money to fund the needs of this case. The motion indicated that, if the trial court approved the expenditure of certain funds, defendant would reapply to the Louisiana Indigent Defense Assistance Board (LIDAB) for additional funds. The motion also said defendant was entitled to make his showing in an ex parte and in camera manner because the issues "may involve privileged matters."
When the trial court considered the motion, it held a portion of the hearing ex parte. Although the court initially said it would consider the defendant's motion during the ex parte hearing, the court actually made no determination under Touchet regarding defendant's request for *176 funding for experts. The court also said it was not going to issue an order instructing defendant to present a request for funding to LIDAB.
Part of the state's obligation in providing effective assistance of counsel to an indigent defendant is to provide the indigent defendant's attorney with the "basic tools of an adequate defense," at no cost to the indigent defendant. State v. Jones, 1997-2593 (La.3/4/98), 707 So.2d 975, 977; Touchet, 642 So.2d at 1215; State v. Jeff, XXXX-XXXX (La.App. 1st Cir.12/28/99), 761 So.2d 574, 577 (per curiam). See also Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). The Louisiana legislature is constitutionally obligated to "provide for a uniform system for securing and compensating qualified counsel for indigents." La. Const. art. I, § 13.[2] Even if the legislature fails to comply with this constitutional command, an individual defendant cannot force legislative action. State v. Peart, 621 So.2d 780, 786 (La.1993).
In response to this constitutional mandate, the legislature established Louisiana's indigent defender system. Indigent Defender Boards oversee indigent defense operations in each judicial district, and each board is funded locally. La. R.S. 15:144 & 15:146; Peart, 621 So.2d at 783. See also La. R.S. 15:147(A)(1)(d), 15:148 & 15:571.11(L).
Pursuant to an emergency interim rule in 1994 (Rule 31), the Supreme Court formed the Louisiana Indigent Defender Board (LIDB). More recently, as a successor to LIDB, the legislature established the Louisiana Indigent Defense Assistance Board (LIDAB) in the office of the governor. La. R.S. 15:151 (added in 1997). See 1997 La. Acts No. 1361, § 3. LIDAB is authorized to provide supplemental funds, when appropriated by the legislature, to judicial district indigent defender boards for the purpose of complying with the requirements of the Louisiana and U.S. Constitutions regarding the right to counsel for indigent defendants in criminal cases. La. R.S. 15:151.2(A).
Under the standards set out by the Louisiana Supreme Court in Touchet, for an indigent defendant to be granted the services of an expert at the expense of the state, he must establish that there exists a reasonable probability both that an expert would be of assistance to the defense and that the denial of expert assistance would result in a fundamentally unfair trial. To meet this standard, a defendant must ordinarily establish, with a reasonable degree of specificity, that the assistance is required to answer a substantial issue or question that is raised by the prosecution's case or to support a critical element of the defense. If the trial court finds the indigent defendant is able to meet this standard, it is to authorize the hiring of the expert at the expense of the state. 642 So.2d at 1216.
The Supreme Court has adopted procedures governing requests by indigent defendants for funds to pay experts:
*177 To recapitulate our holding in this case, an indigent defendant may file a motion for expert funding ex parte. Notice of the filing of the motion should be given to the state, which may file an opposition to the hearing being held ex parte and/or to the request for funding. The trial court should first determine, in camera, either on the face of the allegations of the motion or upon taking evidence at an ex parte hearing, whether the defendant would be prejudiced by a disclosure of his defense at a contradictory hearing. If so, then the hearing on expert funding should continue ex parte. If not, then the hearing should be held contradictorily with the District Attorney. If either side seeks appellate review of a ruling as to the ex parte nature of the hearing, the motion and other proceedings to this point should remain under seal until the appellate review is completed, and thereafter if the ruling is in favor of an ex parte hearing.
At the hearing on expert funding, whether ex parte or contradictory, the defendant must first show a need for the funding. The defendant must show with a reasonable degree of specificity what type of expert is needed and for what purpose. In other words, the indigent defendant requesting governmental funding for the securing of expert assistance must show that it is more likely than not that the expert assistance will be required to answer a serious issue or question raised by the prosecution's or defense's theory of the case. If the defendant meets this burden, then the court is to order that the funds be provided by the state. If the defendant fails to meet this burden, and the proceedings were held ex parte, both the written reasons for denial and the record of the proceedings are to remain under seal during the pendency of the defendant's prosecution, including appellate review.
Touchet, 642 So.2d at 1221-22 (footnote omitted).
The state argues that the ex parte hearing required by Touchet is no longer required because the establishment of LIDAB legislatively repealed Touchet. According to the state, Touchet would apply only if the trial court had a source of funds in the judicial branch for funding the experts. Because that source of funds is now in the executive branch (with LIDAB), the state believes Touchet is no longer relevant and the trial court (as part of the judicial branch) has no authority to order LIDAB (as part of the executive branch) to provide funding for experts. Because the trial court has no authority to order LIDAB to provide any funds, the state believes "nothing can come of [an ex parte hearing]" in the trial court, so one should not be held.
We have found no authority to support the state's argument that Touchet does not apply. Well after the establishment of LIDAB, the Supreme Court has continued to follow the procedures of Touchet.
In State v. Frank, XXXX-XXXX (La.1/17/01), 803 So.2d 1, 9, the Supreme Court noted that the specific issue of what showing an indigent needs to make in order to obtain state-funded expert assistance was addressed in detail in Touchet. The court also said: "The court has made clear that an indigent defendant is entitled to present a trial court with evidence of his or her need for state-funded expert assistance at a hearing on the matter." Frank, 803 So.2d at 10 (citing Touchet, 642 So.2d at 1221). After finding error in the trial court's determination that the defendant was not indigent, the Supreme Court further determined that, "because both this court and the [U.S.] Supreme Court have repeatedly stressed that a capital defendant *178 has the right to introduce virtually any evidence in mitigation during the penalty phase of a capital trial, we find the trial court committed error in not allowing the indigent defendant the opportunity to make a showing under Touchet as to her need for state-funded assistance for the purpose of presenting any such mitigating evidence." Frank, 803 So.2d at 11. The courts of appeal also have continued to follow the procedures set out in Touchet. See State v. Williamson, 35,122 (La.App.2d Cir.1/23/02), 805 So.2d 1235, 1241-42, writ denied, XXXX-XXXX (La.2/7/03), 836 So.2d 94; Jeff, 761 So.2d at 577-78.
Before the trial court, the state argued that defendant's remedy is to file an administrative claim against LIDAB. However, the statutory provisions applicable to LIDAB (La. R.S. 15:15115:151.3) have limited effect and are intended to facilitate the providing of legal services and related expenses only to the extent required by the state and federal constitutions and specific statutory provisions affording the right to counsel. "No provision of R.S. 15:151 through 151.3 or rule adopted pursuant thereto creates or shall be construed to confer substantive or procedural rights in favor of any person accused of any offense." La. R.S. 15:151.4.
Accordingly, this matter is remanded for the trial court to comply with the requirements of Touchet and to determine, in camera, either on the face of the allegations of defendant's motion or upon taking evidence at an ex parte hearing, whether defendant would be prejudiced by a disclosure of his defense at a contradictory hearing. If so, then the hearing on defendant's request for expert funding should continue ex parte. If not, then the hearing should be held contradictorily with the District Attorney. We note that defendant's motion was not filed ex parte, and it currently contains no allegations that would justify the holding of an ex parte hearing. Before any portion of the hearing held on defendant's request for funds is held ex parte, defendant must first show, either by supplementing the allegations of his motion or by presenting evidence at an ex parte hearing, that he would be prejudiced by a disclosure of his defense. Prejudice is not presumed, and ex parte treatment is the exception, not the rule. In order to deviate from the general rule of open and contradictory hearings, there must be a showing of good cause. Touchet, 642 So.2d at 1220.
At the hearing on expert funding, whether ex parte or contradictory, defendant must show a need for the funding by establishing with a reasonable degree of specificity what type of expert is needed and for what purpose. He must show that it is more likely than not that the expert assistance will be required to answer a serious issue or question raised by the prosecution's or defense's theory of the case. Touchet, 642 So.2d at 1221. If defendant meets this burden, then the trial court should set an amount. We note that defendant does not have a constitutional right to the "unrestricted exercise of all the measures money can buy in defense of the charges against him." See State v. Phillips, 343 So.2d 1047, 1054 (La.1977). Just as an indigent defendant is not entitled to the appointment of a particular attorney, see State v. Wille, 595 So.2d 1149, 1154 (La.1992), cert. denied, 506 U.S. 880, 113 S.Ct. 231, 121 L.Ed.2d 167 (1992), even if defendant establishes a need for the assistance of state-funded experts he is not entitled to the experts of his choice. See Ake v. Oklahoma, 470 U.S. at 83, 105 S.Ct. at 1096 ("This is not to say, of course, that the indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own.").
*179 Whether or not defendant is entitled to state-funded experts (because the assistance is required to answer a serious issue or question raised by the prosecution's or defense's theory of the case) is separate from the issue of the source of those funds. Only after defendant has established his need for assistance by a particular type of expert and the trial court has determined the amount of funding required is it necessary for the trial court to resolve any issues that might arise regarding the source of the funds. The Court in Frank did not address the source of funds other than to state that, if the trial court on remand determined the defendant met the standards provided in Touchet, it should "order that state funds be procured so that the defendant may hire the requested expert to assist her defense at the sentencing hearing." 803 So.2d at 11. The Supreme Court gave no indication from where those funds should be "procured" or what the remedy would be if the trial court could not procure the necessary funds. Although trial courts at one time had the authority to order the local government to defray necessary expenses surrounding indigent defense, amendments to La. R.S. 15:304 and 15:571.11 relieve parish governments and the criminal court funds of responsibility for the payment of certain indigent defense costs. See Touchet, 642 So.2d at 1221 n. 4. See also State v. Craig, 1993-2515 (La.5/23/94), 637 So.2d 437. Since those amendments, the Supreme Court has not addressed the precise source of funds or governmental entities responsible when the state has an obligation to furnish funds for indigent defense. In Touchet, the Supreme Court noted the legislature's funding for LIDB (the predecessor to LIDAB) and said "it remains to be seen" if the funds provided to LIDB would be adequate to provide for indigent defense. Touchet, 642 So.2d at 1222 n. 4.
If the trial court determines defendant is entitled to funds for expert expenses, payment of those expenses should first come from the public defender's office, either from its existing budget or from any additional funding provided by LIDAB. See Craig, 637 So.2d at 448. If defendant proves the services and funds of the public defender's office are insufficient to cover the expenses, the trial court will then need to determine if funds are available from any other sources. See State v. Wigley, 624 So.2d 425, 429 (La.1993). The trial court no longer has statutory authority to require the local government to fund the defense, and the trial court has no statutory authority to order LIDAB to change the way it allots funds to the various indigent defense systems or to order LIDAB to spend funds on this particular case.
Accordingly, this writ application is GRANTED and the matter is remanded for further proceedings as expressed herein.
NOTES
[1] We find no merit in the state's argument that the instant writ application is moot because of a supplement defendant filed in a writ application with the Supreme Court. State v. Lee, XXXX-XXXX (La.2/6/04), 865 So.2d 743. Defendant noted in the supplement that this court had not issued a ruling in the instant writ application, and he made it clear he was providing the supplement in an effort to update the Supreme Court on the current status of the funding requests, not in any effort to by-pass review by this court.
[2] Senate Resolution No. 112 and House Resolution No. 151 of the 2003 regular legislative session recognized the 40th anniversary of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and rededicated the state to the promise of equal justice for all, regardless of income, in accordance with the American Bar Association's "Ten Principles of a Public Defense Delivery System," by creating the Louisiana Task Force on Indigent Defense Services. The resolutions provide that the task force should study the system in Louisiana of providing legal representation to indigent persons who are charged with violations of criminal laws and make an initial report of its findings and recommendations for change in legislation to the legislature no later than March 1, 2004.