WEIMER, J.,
dissents.
_JjI respectfully dissent from the majority’s decision to permit the subpoenas requested by the Calcasieu Parish District Attorney’s Office to go forward.
The real issue presented in this matter is whether the subpoenas sought in this case are a correct vehicle for addressing issues related to indigent defense funding. For multiple reasons, I believe that the majority’s decision to sanction the issuance of the subpoenas sought by the District Attorney is fundamentally at odds with the law, and while I share my colleagues’ frustration with the recurring problem of providing for and funding adequate indigent defense, I do not believe the wide-ranging subpoenas sought in this criminal proceeding represent the ^correct procedure or venue for addressing the funding issues that seemingly persist in parts of our state.
The subpoenas that are in dispute in this matter were sought pursuant to La. C.E. art. 507, which requires, inter alia, a showing that the information sought is essential to the successful completion of an ongoing investigation, prosecution, defense, and there is no practicable alternative means of obtaining the information. La. C.E. art. 507(A)(1) and (4). The subpoenas sought by the District Attorney fail to satisfy both prongs of this test.[1]
First, the subpoenas do not meet the requirement that the information sought be essential (and not simply relevant) to the successful completion of an ongoing investigation, prosecution, or defense. La. C.E. art. 507(A)(1) (emphasis added). The prosecution at issue — that of the Vin-cents — raises only one issue for the district court to resolve: should the proceedings in this non-capital prosecution be stayed because there are no funds available to pay for expert witnesses? The testimony of James Dixon, Jr., the head of the Calca-sieu Parish Office of Indigent Defense, establishes that there are no funds available for expert witnesses, and that even if additional funds are made available, they will not be allocated to pay for experts in this case (as more pressing needs exist in the jurisdiction). At any rate, the district *234 court cannot order the Louisiana Public Defender Board (“LPDB”) to provide additional funds to Calcasieu Parish. State v. Citizen, 04-1841 (La.4/1/05), 898 So.2d 325 (La. Const, art. II, § 2 provides that “no one of [the three separate | ^branches of government], nor any person holding office in one of them, shall exercise power belonging to either of the others” and “the constitution explicitly places the duty of providing a working system for securing the representation of indigent defendants squarely on the shoulders of the legislature.”); State v. Lee, 04-0129 (La.App. 1 Cir. 4/6/04), 879 So.2d 173, 179 (a district court “has no statutory authority to order [a legislatively created public defender board] to change the way it allots funds for the various indigent defense systems or to order [a legislatively created public defendant board] to spend funds on [a] particular case.”). Therefore, even if an investigation into the funding decisions of the LPDB and the use of LPDB funds by the non-profit indigent defense offices is arguably relevant to the issue presented— whether the prosecution can proceed with the lack of funds available for expert witnesses — the information is certainly not essential to the prosecution, when it cannot lead to any meaningful resolution of the problem.
Further, the fact that the information sought via subpoena is not essential to the prosecution is made even more evident when it is considered that the District Attorney is also required to prove as part of the La. C.E. art. 507 showing that there is no practicable alternative means of obtaining the information sought. The LPDB and the nonprofit indigent defense firms are subject to an annual audit. These annual audits are public documents, readily available on the internet, and provide a complete picture of how dollars are allocated and spent on indigent defense. The District Attorney has not offered an explanation as to why the documents available on the internet are not sufficient to satisfy its concerns, other than to argue “they’re fiscal audits, they’re not performance audits.”
Clearly, then, the subpoenas requested by the District Attorney fail to meet 14the statutory requirements of La. C.E. art. 507; but they are improper for another, more fundamental reason. As the District Attorney candidly acknowledges, the purpose of the subpoenas is to challenge and attack the funding decisions of the LPDB as regards capital cases.[2] Through the subpoenas, the District Attorney is attempting to do indirectly, under the auspices of a criminal prosecution, what it cannot do directly: challenge the funding mechanism and decisions of the LPDB in Calcasieu Parish. Funding indigent defense is a matter within the exclusive purview of the legislature.[3] Such funding is a matter of statewide concern.[4] For that *235 reason, the legislature has provided, in La. R.S. 15:149.1, a mandatory venue for any civil proceedings against the LPDB in East Baton Rouge Parish. To allow the current subpoenas to issue will result in an unworkable and untenable situation: district courts in every jurisdiction will be able to engage in wide-ranging inquiries regarding LPDB funding decisions, resulting in numerous conflicting decisions as judges second guess decisions that are the exclusive province of the legislature and the executive branch.[5] The mandatory venue provision of La. R.S. 15:149.1 is, I would suggest, designed to prevent precisely |fisuch an occurrence.
While there is no doubt that the funding of indigent defense is a matter of great and pressing concern in Calcasieu Parish, the problem is not unique to Calcasieu Parish. Any concerns and/or challenges to the LPDB’s funding decisions must, in accordance with the relevant statutory provisions, be addressed in a civil proceeding in which the LPDB is made a party, in a single forum — East Baton Rouge Parish— and not through the vehicle of wide-ranging subpoenas in a criminal prosecution in Calcasieu Parish.

. The district court, in its ruling permitting the subpoenas to go forward, left for another day the question of whether the subpoenas comply with La. C.E. art. 507(A)(3) by seeking information “reasonably limited as to subject matter and period of time.” Thus, whether the subpoenas are, as the various nonprofits involved in this matter argue, unduly burdensome, and ultimately self-defeating because compliance will force the reallocation of limited employee and financial resources and disrupt client representation, is a matter not presently before the court.

.The District Attorney’s office argued:
[T]he State's position is that the problem faced by the Calcasieu Parish Public Defender's Office is the fact that it receives inadequate funds from the Louisiana Public Defender Board, due, in part, to that agen-cie's [sic] excessive funding to various entities and agencies in the ever-shrinking litigation area of pre and post capital defense. That money, instead, should be put where the majority of cases are. And so it's the State Board that's manufactured — according to the State’s theory, the State Board has manufactured the funding crisis.

. La. Const, art. I, § 13 provides, in relevant part: “The legislature shall provide for a uniform system for securing and compensating qualified counsel for indigents."

. In fact, the legislatively declared mission of the Louisiana Public Defender Act is to ensure "that the right to counsel is delivered by qualified and competent counsel in a manner that is fair and consistent throughout the *235 state." La. R.S. 15:142(B)(4) (emphasis added).

. This appears to be exactly the type of result the legislature attempted to prevent when it included in La. R.S. 15:142(B)(2) an express declaration that one purpose of the Act was to ensure "that the public defender system is free from undue political and judicial interference.”