ROLAND L. BELSOME, Judge.
hThe defendant,. Christopher Bell, appeals his conviction and sentence for manslaughter. For the reasons that follow, we affirm the conviction and the sentence.

Siatement'of Facts

On August 26, 2011, Lionel Williams was shot and killed at East Shore Park in New Orleans. At the time of the shooting, there was a crowd of people at the park for a party. Approximately three months after the shooting, Siera Whitley met with a federal agent and gave a statement regarding what she had witnessed on the day of the shooting. At that time, Ms. Whitley identified the defendant as the shooter from a photographic lineup.

Procedural History

By bill of information, the defendant Christopher J. Bell (“Mr. Bell”) was charged with second-degree murder (La. R.S. 14:30.1) of Lionel Williams. Subsequently, the defendant appeared for arraignment and pled not guilty. He filed motions to suppress the evidence and identification which the trial court denied.'
| ¾A jury trial was held from February 24-26, 2015. The jury returned a verdict of guilty as to manslaughter. The defendant was sentenced to forty years, without the benefit of parole, probation or suspension of sentence to be served concurrently with any other sentence. A hearing was held that same day on, the State’s multiple bill of information. Thereafter, the trial court adjudicated the defendant a fourth felony offender, vacated his original sentence of forty years, and re-sentenced him to life imprisonment at hard labor without benefit of parole, probation and suspension of sentence. The trial court also denied the defendant’s motion for new trial and for post-verdict judgment of acquittal. This appeal followed.

Assignments of Error

On appeal, the following assignments of error are raised: 1) there was insufficient evidence to convict the defendant therefore the trial court erred in denying the defendant’s motion for post-verdict judgment of acquittal and alternatively, in denying the defendant’s motion for a new trial; 2) the trial court erred by giving the jury .an Allen charge; 3) the trial court erred by allowing the State to introduce inadmissible other crimes evidence; 4) the trial court denied the defendant due process by-repeated reference to his prior incarceration; 5) the non-unanimous jury verdict is unconstitutional; and 6) the trial court *361 erred by adjudicating the defendant a multiple offender.
| ^Sufficiency of the Evidence
The defendant argues that the verdict was contrary to the law and evidence and therefore the trial court should have granted his motions for post-verdict judgment of acquittal.
Under La. R.S. 14:31(A)(1), manslaughter is “... a homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average'person of his self-control and cool reflection. “Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender’s blood had actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed. The State was required to prove “the defendant’s specific intent to kill or cause great bodily harm.”
“A post-verdict judgment of acquittal shall be granted only if the court finds that the' evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty.”[1] When “reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt.”[2] In State v. Mussall, the Louisiana uSupreme Court, discussing the Jackson standard, stated that a reviewing court must- consider the record through the eyes of a hypothetical rational trier of fact who interprets all of the evidence as favorably to the prosecution as any rational fact finder can.[3] The inquiry requires the reviewing court to ask whether such a hypothetical rational trier of fact interpreting all of the evidence in this manner could have found the essential elements of the crime beyond a reasonable doubt.[4] “The testimony of a single witness, if believed by the trier of fact, is sufficient to support a conviction.”[5] A trier of fact’s determination as to the credibility of a witness is a question of fact entitled to great weight, and its determination will not be disturbed unless it is clearly contrary to the evidence.[6]
Siera Whitley was the sole eyewitness who talked to police, about the shooting. She testified that people had gathered at the park for a party, it was daylight, and the park was full of people when the shooting occurred. Ms. Whitley, who knew Mr. Bell from living in the same area of town, testified that Mr. Bell walked over and greeted Lionel Williams. Once Lionel Williams turned around, Mr. Bell shot him in the back of his head. After Lionel Williams fell to the ground, Mr. Bell-shot him several more times. Ms. Whitley testified that his brother, Gabriel Bell, whom she was also familiar with, accompanied Mr. Bell, and they both drove away, after the shooting, in,a vehicle she described as a Saturn.
*362 [fiOn cross-examination, in an effort to discredit the State’s witness, the defense challenged Ms. Whitley’s testimony suggesting that she was testifying to get a federal inmate, Brian Glover’s, sentence reduced. This allegation was made based on her Pacebook name, Siera Glover. However, she stated several times that she did not know Brian Glover, and her name on Facebook was in regards to her child’s father, Larry Glover.
The State also called Detective Decyna Barnes of the NOPD as a witness. She testified that Corey Thomas, a fellow inmate of Mr. Bell at Avoyelles Correctional Center in 2012, had informed her that Mr. Bell admitted to killing Lionel Williams and provided details. She stated that based on that information she contacted the Orleans Parish District Attorney’s office. Mr. Wayne Rumore, an investigator with the Orleans Parish DA’s Office, also testified that Mr. Thomas had informed him that Mr. Bell admitted to killing Lionel Williams, in the same manner that Ms. Whitley had described. Mr. Rumore further testified that Mr. Thomas told him Mr. Bell threatened to kill Ms. Whitley. However, at trial Mr. Thomas testified that he did not talk to investigators and that Mr. Bell did not tell him anything in regards to the shooting.
In this case, the jurors heard Ms. Whitley’s testimony that it was daylight when the shooting occurred and that she recognized the defendant. She testified that after the defendant greeted the victim, and the victim turned around, the defendant shot the victim without provocation. ■ Once the victim fell to the ground, the defendant shot him several more times.
|fiIn addition to Ms. Whitley’s testimony, the jurors heard Investigator Wayne Ru-more recount several meetings he had with Cory Thomas. Mr. Thomas knew the defendant and was housed with him in the fall of 2012 at the Avoyelles Paris Correctional Institution. Mr. Rumore recounted that Mr. Thomas told him the defendant admitted and bragged about the shooting and that the defendant had a lack of remorse for the victim’s death. Detective Decynda Barnes also testified that Cory Thomas contacted her with information that the defendant had bragged to him about the shooting.
Reviewing the record in accordance with Jackson, Ms. Whitley’s testimony in addition to the corroboration by Mr. Rumore’s and Det. Barnes’ testimony is sufficient to convince a rational trier of fact that Mr. Bell was guilty beyond a reasonable doubt of manslaughter. Accordingly, the trial court did not err in denying the defendant’s motion for post-verdict acquittal.
The defendant also asserts that he was entitled to a new trial in accordance with La. C.Cr.P. art. 851(B)(1) because his guilty verdict was not supported by the evidence. Here we have reviewed the evidence and found that it was sufficient to support the verdict. Thus, we find no error with the trial court’s denial of the motion for new trial.

Allen Charge

The defendant contends that the trial court erred in obtaining the verdict by giving a prohibitive and coercive Allen charge to the jury. An Allen charge refers 17to a charge given for the purpose of breaking a jury that is deadlocked.[7] Allen charges are disfavored in Louisiana. In addition to the charge emphasizing that the jury has a duty to reach a verdict, implying that the trial judge will not ac *363 cept a mistrial, that implied duty is often coupled with an admonition by the trial judge for those in the minority to rethink their position, creating pressure to conform to the majority’s view.[8]
In the instant case, the jury deliberated for two hours and forty-six minutes then notified the trial court judge that they were at an impasse. The trial court judge’s instructions that follow are at issue:
“THE COURT:
All right, Ladies and gentlemen of the jury, I have received your note, ‘and advised the State and defense.
Let me just remind you. We spent a long time, taking the time to select y’all. And. we’ve spent over 72 hours going through this case together. So it’s been three days that we’ve committed to this case. It’s a very serious offense. Am I would urge you at least continue in your deliberations with the effort to reach a verdict.
Mr. Harper, you’re the jury foreman. Do you feel that further deliberations will assist you? I’ll remind you that y’all haven’t been back there terribly long.
JURY FOREMAN:
I know, and I was thinking the same thing, Your Honor, we just have a certain segment that are—
THE COURT:
Do you feel that y’all could discuss it a little bit longer?
JURY FOREMAN:
We could, but, I mean, I specifically asked if there was any wiggle room or any additional consideration. And they were fairly obstinate.
J¿THE COURT:
Well, let’s give it a little bit more time. I’ll ask y’all to- step back a' little bit longer and just knock on the door. If y’all continue to be at an impasse just knock on the door.
(The jury leaves the courtroom at 6:31 p.m. to continue deliberations)
•THE COURT:
Case No. 511-096
All right. I’ll note for the record it’s been less than two hours that the jury has been deliberating. And closing Arguments alone were over three hours. So I’ve asked the jury to go back and continue in their deliberations. We’re in recess.
COUNSEL FOR DEFENDANT:[9]
Judge, just for the record, we would orally put on the record a Motion for a Mistrial in light of Mr. Harpers’ statements relative to the melee, for lack ofia better term.
THE COURT:
All right. And I’ll note for the record that during the course. of asking Mr. Harper if further deliberations ■ would assist, there were some nods, some not. But there was some activity .among the jurors that indicated to me that they were open to further discussion. So I’ll note your objection.
And your Motion for Mistrial is denied.”
After twenty additional minutes of deliberation, the jury returned a 10-2 verdict to convict the defendant of manslaughter. The defense argues that the trial judge erred because it failed to inform the minority jurors to not surrender their own beliefs in order to reach a verdict. He *364 also argues that the short time frame of the additional deliberations, proved that minority members of the jury surrendered their beliefs..
In the defendant’s argument, he imposes a duty for the judge to charge the minority jurors to not surrender their own beliefs. However, the charge is only | nproblematic if the trial court pressures the minority to comply with the majority against their own beliefs.. Here, the trial court did not tell the minority jurors to rethink their position or imply -that it would not accept a mistrial. The judge- urged the jury to continue deliberations because of the short period of time they had discussed the case in relation to the time it took for the parties to present the case. The trial court reminded the jury that the presentation of the case took more than three days, that it was' a very serious offense, and urged the jury to continue in their deliberations to reach a verdict. By giving the additional charge, the trial court did not tell the jurors holding the minority view to rethink their positions in light of the majority’s stance in order to reach a verdict. In addition, the trial court noted on the record that some of the jurors indicated through affirmative nodding that additional deliberations might be helpful.
In State v. Lewis, this court found that the trial judge’s direction to the jury “to continue to deliberate and made every effort to speak to your fellow jurors and try to come to some sort of conclusion, to the best of your abilities ...” did not suggest that the jury had a duty to reach a verdict, or imply that the trial judge would not accept a mistrial. Likewise, in the instant case, the judge’s instructions were not coercive, thus, we find no error in the additional jury instructions;

Admission of Evidence

The defendant challenges the admissibility of testimony elicited from Ms. Whitley regarding threats made against her by unknown individuals. He contends that the testimony equivalent to introdúc-ing impermissible other crimes evidence |i0of public intimidation of a witness, obstruction of justice and extortion in violation of La. C.E. art. 404(B)(1).[10]
At trial, Ms. Whitley had to leave the courtroom in.the middle, of testifying because she became visibly upset and physically ill.. Once she returned to the stand, she stated that she was nervous and scared about testifying. She claimed that she had gotten phone calls and the unknown caller had threatened her and her family. However, Ms. Whitley’s expressly stated that Mr. Bell was not the caller, that he had not threatened her, and that she was not frightened of him. Accordingly, the statements referencing possible public intimidation of a witness, obstruction of justice, and extortion were not directed at the defendant. Therefore, there has been no violation of La. C.E. art. 404(B)(1).

Due Process

The defendant contends that he was prejudiced by the testimony of Lt. Thomas Heptinstall regarding the defendant’s pretrial incarceration with Corey Thomas. The defendant argues that the testimony was highly prejudicial, non-probative and violated fundamental concepts of due process of law. The defense compares Lt. Heptinstall’s testimony to the defendant *365 having to stand trial in an orange Department of Corrections jumpsuit.
This issue was not preserved for appellate review because the defendant failed to lodge a contemporaneous objection to the testimony and fully participated- Inin the cross-examination of the witness. La. C.Cr.P. art. 841(A) provides that “[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence,” and the party stated the grounds for the objection.[11] Therefore, there is no basis for a review of this assignment of error.

Non-Unanimous Jury Verdict

The defendant argues that the-Sixth Amendment requires a unanimous jury verdict, thus, the 10-2 verdict he was convicted on is unconstitutional. In State v. Bertrand, the Louisiana Supreme Court held that “a constitutional challenge may not be- considered by an appellate court unless it was properly pleaded and raised in the trial court below.” In the instant case, the defendant did not raise the proper constitutional challenge to the issue in the trial court, thus it cannot be raised on appellate review.
Even had the challenge been properly preserved, the Louisiana Supreme Court has upheld the constitutionality of non-unanimous jury verdicts pursuant to Article 782 of the Louisiana Code of Criminal Procedure. Similarly, in McDonald v. City of Chicago, the United States Supreme Court held that the Sixth Amendment right to trial by jury does not require a unanimous jury verdict .in state criminal trials.[12] Thus, the current state of the law does not find non-unanimous jury verdicts to be unconstitutional. - -

Multiple Offender

In this assignment of error the defendant argues that the trial court erred in adjudicating him' a fourth felony offender. The defendant bases this assignment on Lathe assertion that the State did not prove his identity with respect to Case No. 474-524 because the State’s expert failed to locate his fingerprints on the bill of information from that prosecution.
To obtain a habitual offender conviction, the State is required to establish both the prior felony conviction and that the defendant is 'the same person convicted of that felony.[13] The court in Payton explained that in attempting to establish identity, the State may present:
(1) testimony from witnesses; (2) expert opinion regarding the fingerprints of the defendant when compared with those in the prior record; (3) photographs in the duly authenticated record; or (4) evidence of identical driver’s license number, sex, race and date of birth.[14]
Thus, matching the fingerprints on the bill of information from an initial crime is not required for the State to prove that a defendant charged as a habitual offender is the same person previously convicted.
It is well established that when, as in this case, a defendant’s multiple offender adjudication relies on a conviction obtained through a guilty plea, the State has the burden' of proving the existence of the guilty plea, and that the defendant was represented by counsel at the time of the *366 guilty plea.[15] If the State meets its threshold burden of proof, the burden then shifts to the defendant to produce some affirmative evidence of an infringement of his rights or a procedural irregularity.[16]
11RThe record in this case indicates the multiple bill of information charged that the defendant had three predicate Orleans Parish convictions: Case No. 473-448 (second degree robbery), Case No. 474-524 (second degree robbery), and Case No. 469-280 (possession of crack cocaine). In each of those cases, the defendant pled guilty in the same section of Orleans Parish Criminal District Court on the same day-February 6, 2009. Certified court documents introduced during the multiple bill hearing reflect that in each of the predicate cases, the Boykin form, which the defendant initialed and signed, as did his attorney, reflects that he was represented by counsel when he entered his guilty plea. It further evidences that he was advised of his rights, acknowledged that he understood his rights, chose to waive them and voluntarily pleaded guilty.
At that point, the burden shifted to the defendant to produce some affirmative evidence proving an infringement of his rights or a procedural irregularity. The defendant failed to do so. The record indicates that the arrest registers for the predicate convictions reflect the same name, sex, and race, date of birth and driver’s license number. The “Christopher J. Bell” who pled in Case No. 474-524 was represented by the same lawyer as “Christopher J. Bell” who pled in Case No. 473-448. Moreover, the signatures “Christopher J. Bell” on the documents pertaining to the predicate offenses appear identical. The defendant presented no countervailing evidence to dispute the State’s evidence. Based upon the record, the State met its burden of proof to establish that Mr. Bell was a fourth felony offender.

_J^Conclusion

For these reasons, Christopher J. Bell’s conviction and sentence are affirmed.
AFFIRMED.

. La. C.Cr.P. art. 821(B).'

. State v. Pigford, 05-0477,, pp., 5-6 (La.2/22/06), 922 So.2d 517, 520-21 (citing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

. Id.

. Id. at 1309-10.

. State v. Wells, 10-1338, p. 4 (La.App. 4 Cir 3/30/11), 64 So.3d 303, 306. (citations omitted).

. Id.

. Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896) (United States Supreme Court approved a charge to break a jury deadlock and accomplish jury unanimity).

. State v. Collor, 9.9-0175, p. 13 (La.App. 4 Cir. 4/26/00), 762 So.2d 96, 104.

. Original transcript names the counsel for defendant. Referencing counsel by name is unnecessary for the purpose of this opinion.

. La. Code of Evidence article 404 reads in pertinent part:
B. Other crimes, wrongs, or acts.- (1) Except as provided in Article'412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith ...

, State v. Williams, 13-0283, p. 31 (La.App. 4 Cir. 4/23/14), 137 So.3d 832, writ denied, 2014-1231 (La. 1/16/15), 157 So.3d 1128.

. McDonald v. City of Chicago, Ill,, 561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010).

. State v. Payton, 00-2899, p. 6 (La.3/15/02), 810 So,2d 1127, 1130 (citing State v. Neville, 96-0137 (La.App. 4 Cir. 5/21/97), 695 So.2d 534, 538-539)'.

. Payton, at p. 6, 810 So.2d at 1130-31.

. State v. Francois, 02-2056, p. 6 (La.App. 4 Cir. 9/14/04), 884 So.2d 658, 663.

. State v. Golden, 13-0012 (La.App. 4 Cir. 10/30/13), 126 So.3d 829, 832 (citing State v. Shelton, 621 So.2d 769, 779-780 (La.1993)).