MICHAEL E. KIRBY, Judge.

STATEMENT OF THE CASE:

Robert Wells was charged with home invasion to which he plead not guilty. Following a preliminary hearing, the district court found no probable cause as to the home invasion charge but it found probable cause for domestic abuse battery. After a judge trial, Mr. Wells was convicted of the lesser charge of unauthorized entry into an inhabited dwelling. He was sentenced to serve three years at hard labor, suspended, and he was placed on two years active probation with fines and fees. The district court denied defendant’s motion to reconsider his sentence.

TRIAL TESTIMONY:

MICHELLE LEE WILSON:

The victim, Michelle Lee Wilson, was called by the state. Once it appeared that *305 she was recanting[1] her report of the alleged offense the State asked for and received permission to treat her as a hostile witness under cross-examination. Her testimony is summarized as follows:
| ¡.On August 4, 2009, defendant entered the home he had shared with her. Defendant had a key and had permission to enter. When defendant entered the house, Wilson and Thomas Anderson were sleeping in the bedroom. Following an argument with defendant, Wilson called 911 and reported the incident (the 911 tape was played in open court). Wilson admitted that the tape reflected she told the 911 operator, “He came into my house and I asked him not to come in, ...” She also admitted telling the 911 operator that the door was locked and that defendant was her “ex”. Wilson denied in her testimony that defendant damaged the front door and the wall when he entered the house claiming that damage occurred when she moved into the house. Wilson identified a photograph of her forearm showing redness and swelling but denied the injuries were sustained during a physical altercation with defendant. Wilson denied that defendant struck, slapped her, or threw her across the room. She stated that all defendant did was push her aside to get to Mr. Anderson. She described Mr. Anderson as her “ex” and defendant as her flaneé. She stated that Mr. Anderson was staying with her because his “lights was off and I was being nice to let him stay there”. She testified that she and defendant lived together; that she saw him that morning; that Anderson had only been there for a short time; and that she did not inform defendant that he was going to stay at the house.

OFFICER LISA LEWIS:

On August 4, 2009, Officer Lisa Lewis responded to a call of a domestic disturbance. Upon arrival she observed defendant in front of the house shirtless, very angry, and very aggressive. He was cursing and shouting that his girlfriend was with another guy. When Lewis approached defendant she smelled alcohol on 13his breath and she handcuffed him for her safety. She interviewed Ms. Wilson during which Wilson told her that she [Wilson] and defendant were involved in a physical altercation whereby defendant kicked open the front door, pulled her out of bed, forced her into the living room, and pushed her to the floor. Wilson told Lewis that defendant did not have permission to enter the house. The door was locked; she heard a bang; and defendant was inside the bedroom. Inside the house, Lewis observed that the front door was “stuck” into the wall; the door lock and door jamb were broken; and blood was on the door. Wilson was crying, distraught, and appeared to have been in an altercation. Officer Lewis observed swelling and scratches on Wilson’s right forearm and neck and observed a hole in the wall which corresponded to the door knob and deadbolt lock, which she opined was caused when the door was forced open. Lewis arrested defendant and conducted a search incident to his arrest; defendant was not in possession of keys to the house.
Lewis further testified she did not observe a physical altercation, did not see anyone force open the front door, and had no knowledge of when the door was pushed open or when the blood stains were spattered on the door. She had no knowledge of when Wilson sustained the injuries to her forearm.

*306
ERRORS PATENT:

A review of the record reveals no errors patent not raised by defendant as an assignment of error. We will address this further in Assignment of Error Number 2.

¡¿DISCUSSION:

ASSIGNMENT OF ERROR NUMBER 1:

By his first assignment of error defendant argues that there was insufficient evidence to support his conviction for unauthorized entry of an inhabited dwelling. Specifically, he asserts that there was no evidence that Ms. Wilson owned or rented the residence. He also asserted that he had authority to enter the home because he and Wilson lived together at the residence, and he had a key to the residence.
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4th Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court is not permitted to consider just the evidence most favorable to the prosecution but must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall, 523 So.2d at 1309-1310. “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319, 1324 (La.1992).
l.sA factfinder’s credibility decision should not be disturbed unless it is clearly contrary to the evidence. State v. Hucka-bay, 2000-1082 (La.App. 4 Cir 2/6/02), 809 So.2d 1093; State v. Harris, 99-3147 (La. App. 4 Cir. 5/31/00), 765 So.2d 432. The testimony of a single witness, if believed by the trier of fact, is sufficient to support a conviction. State v. White, 28,095 (La.App.2d Cir.5/8/96), 674 So.2d 1018.
Conflicting statements as to factual matters is a question of weight of the evidence, not sufficiency. State v. Jones, 537 So.2d 1244 (La.App. 4 Cir.1989). Such a determination rests solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witness. Id. A trier of fact’s determination as to the credibility of a witness is a question of fact entitled to great weight, and its determination will not be disturbed unless it is clearly contrary to the evidence. State v. Vessell, 450 So.2d 938 (La.1984).
In the instant case there was ample admissible evidence to support the conviction. Although Wilson, who had been declared a hostile witness, testified that defendant had authority to enter the residence, and the door had been damaged when she moved into the house, her contemporaneous emergency 911 call and the testimony of Officer Lewis belie her trial testimony. After the 911 tape was played in open court, Wilson admitted that she told the 911 operator that the door was locked to keep defendant out of the residence and that she asked him not to come in. She further testified that she was inside the bedroom with Thomas *307 Anderson, and that defendant pushed her out of the way so that he could get to Anderson. Officer Lewis testified that the front door was pushed open; the lock and door jamb were broken; and the door knob was stuck in the wall. Lewis further stated that | fiWilson told her that defendant kicked open the door, pulled her out of her bed, dragged her into the living room and pushed her to the floor. Lewis saw bruises and swelling on Wilson’s neck and forearm. Lewis testified that Wilson explicitly told her that she [Wilson] told defendant to stay out of the house. Lewis’s testimony is consistent with Wilson’s statements made on the 911 tape. Obviously, the trial court rejected Wilson’s trial testimony which contradicted her statements on the 911 call and accepted Officer Lewis’s testimony. See State v. Rankin, 42,412 (La.App.2d Cir 9/19/07) 965 So.2d 946 which recognized that the 2004 amendment to C.E. art. 801(D)(1)(a) made a witness’s prior inconsistent statement in a criminal case non-hearsay. Since they are non-hearsay such statements may be used for their assertive value upon laying the proper foundation. We note that the Court there opined that the amendment appears to have been intended to address cases of domestic violence “which are among the most fertile grounds for non-cooperative non-party witnesses.” 42,412 at 7, 975 So.2d at 950-951. See Beloof and Shapiro, Let The Truth Be Told: Proposed Hearsay Exceptions to Admit Domestic Violence Victims’ Out of Court Statements as Substantive Evidence, 11 Colum. J. Gender & LI (2002).
A review of the jurisprudence also supports defendant’s conviction.
In State v. Wilson, 2006-1421 (La.App. 4 Cir. 3/28/07), 956 So.2d 41, this court rejected similar arguments made by the defendant. In Wilson, the defendant was convicted of unauthorized entry into an inhabited dwelling. No evidence was adduced at trial to show that the defendant’s ex-girlfriend either owned or rented the residence. The State did not present a title to the residence or a rental agreement, but the defendant’s ex-girlfriend clearly testified that she and her 17children lived in the residence and that she did not give the defendant permission to enter.
In State v. Nunnery, 2004-1560 (La. App. 4 Cir. 12/8/04), 891 So.2d 67, the defendant, who had done work on the victim’s house, was found inside the house when the victim was not at home. The victim testified that although she had known the defendant for many years and had allowed him to sleep in the house when he was repairing it, she made it clear to him that he could not be in the house when she was not there. This court affirmed his unauthorized entry conviction, finding that the evidence showed he entered the house without the victim’s permission.
In State v. Coleman, 2002-1000 (La.App. 4 Cir. 9/25/02), 828 So.2d 1130, the defendant and the victim had engaged in an on-again, off-again relationship wherein they lived together for a time. At the time of the offense they were estranged, but the defendant still had some belongings in the residence. The defendant broke into the residence and raped the victim. The victim denied giving the defendant permission to enter the residence, while the defendant testified that the victim invited him inside, discussed their relationship with him for a few hours, and only became upset when their son came home. There was evidence that the police had escorted defendant from the residence on a prior occasion and that he was told that if he wanted to return to pick up any of his belongings, the police would accompany him. On appeal, this court found that *308 there was sufficient evidence of unauthorized entry to support his La. R.S. 14:62.3 conviction.
In State v. Cojoe, 2000-1856 (La.App. 4 Cir. 3/21/01), 785 So.2d 898, the defendant and the victim had lived in the victim’s house prior to their divorce and again for a time after the divorce. Some of the defendant’s belongings were still in | sthe house. However, a few weeks before the offense the victim threw the defendant out of the house and changed the locks to keep him from entering. The defendant entered the house while the victim was out of town. This court affirmed his unauthorized entry conviction, noting that although the defendant had permission in the past to enter the house, the evidence that the victim subsequently made him leave and that she changed the locks proved that the defendant had no permission to enter on the date of the offense.
In State v. Woods, 526 So.2d 443 (La. App. 4 Cir.1988), the defendant and the victim were still married, but she had moved into another apartment with another man, and the apartment was in her and the other man’s names. This court rejected the defendant’s argument that the victim could not withhold permission for him to enter the apartment because she was using community funds to rent it. This court found that the apartment was not a community dwelling which would have given him a proprietary interest in it.
Here we recall the victim’s 911 call where she stated to the operator, “He came into my house and I asked him not to come in; ” as well as her statement that defendant was her “ex.” (Emphasis added) Additionally she told Officer Lewis that defendant did not have permission to enter the house. The trial judge as the trier of fact obviously weighed the victim’s conflicting statements and credited her contemporaneous 911 call over her trial testimony.
Accordingly, we find the evidence here is sufficient to support Mr. Wells’ conviction. This assignment of error is without merit.
| ^ASSIGNMENT OF ERROR NUMBER 2:
By this assignment of error, defendant claims that the trial court erred in ordering him to pay $800.00 to the “Judicial Expense Fund” instead of to the Criminal District Court Fund.
Defendant did not specifically object to this financial assessment[2], nor did he specifically allege this ground in his motion for reconsideration of his sentence. Ordinarily, this would preclude review on appeal. See La.C.Cr.P. art. 881.1; C.Cr.P. art. 881.2; State v. Robinson, 98-1606 (La. App. 4 Cir. 8/11/99), 744 So.2d 119. However, since this error is apparent by inspection of the record and is based on the face of statutory law, the error is reviewable as an error patent. See La.C.Cr.P. art. 920(2).
*309 La.C.Cr.P. art. 895.1(B) provides that when a court suspends the imposition or execution of a sentence and places a defendant on probation, it may order, as a condition of probation, “an amount of money to be paid by the defendant to ...” among others, the victim (as compensation in addition to restitution); the indigent defender program for the respective court; a law enforcement agency for reasonable costs incurred in arresting a defendant for distribution of controlled dangerous substances; etc. La.C.Cr.P. art. 895.1(B)(2) provides for payment to “the criminal court fund to defray the costs of operation.” La. R.S. 15:571.11 “sets |inup a scheme” providing for the collection and deposit of “all fines and forfeitures imposed by the district courts.... ” See State v. Craig, 93-2515, p. 5 (La.5/23/94), 637 So.2d 437, 442 (superceded by statute on other grounds), State v. Citizen, 2004-1841 (La.4/1/05), 898 So.2d 325. La. R.S. 15:571.11(D) specifically provides such a scheme for Orleans Parish, and states:
All fines and forfeitures, including forfeitures of criminal bail bonds, imposed in criminal cases and prosecutions by the courts of Orleans Parish and any payments ordered as a condition of probation under Code of Criminal Procedure Art. 895.1(B)(2) shall, upon collection, be paid to the criminal sheriff of Orleans Parish who shall deposit same in a special account, and shall thereafter be divided equally between the district attorney of Orleans Parish and the criminal district court of Orleans Parish in two special accounts, one account to be administered by the judges of the criminal district court of Orleans Parish, and the other account to be administered by the district attorney of Orleans Parish to be used in defraying the expenses of the criminal courts of the parish, extraditions, and such other expenses pertaining to the operation of the criminal court of Orleans Parish and the office of the district attorney of Orleans Parish. Disbursements from the account to the criminal district court and district attorney shall be made on an equal basis. Said accounts shall be annually audited by the director of finance of the city of New Orleans. (Emphasis added.)
La. R.S. 13:1381.4 provides for a Judicial Expense Fund for Orleans Parish Criminal District Court, and provides in pertinent part:
A. (2) In addition to all other fines, costs, or forfeitures lawfully imposed by this Section or any other provision, the court may impose an additional cost against any defendant who has been finally convicted of a misdemeanor, excluding traffic violations, or a felony. The additional costs authorized in this Paragraph shall not exceed two hundred fifty dollars in the case of a misdemean- or nor exceed two thousand dollars in the case of a felony. All such sums collected shall be transmitted to the judicial administrator for further disposition in accordance herewith. (Emphasis added.)
| ^Defendant contends that the trial court was without statutory authority to order him to pay $800.00 to the Judicial Expense Fund, which is provided for by La. R.S. 13:1381.4. Pursuant to La.C.Cr.P. art. 895.1(B)(2) defendant could have been ordered to pay a fine of $800.00 to the Criminal Court Fund, or he could have been ordered to pay costs in the amount of $800.00 to the Judicial Expense Fund pursuant to R.S. 13:1381.4(A)(2). However, defendant correctly notes that the trial court did not assess costs, presumably due to defendant’s indigency status.
In State v. Hall, 99-2887 (La.App. 4 Cir. 10/4/00), 775 So.2d 52, this court reversed the trial court’s order directing the defen *310 dant to pay a $1000.00 assessment as a condition of probation to the Judicial Expense Fund and remanded the case for the district court to correct the sentence by ordering that the $1,000.00 assessment imposed as a condition of probation be payable to the Criminal Court Fund in accordance with La.C.Cr.P. art. 895.1(B)(2).
In State v. Rugon, 355 So.2d 876 (La. 1977), an Orleans Parish Criminal District Court judge imposed a special condition on the defendant requiring that he “donate” $200 to the Judicial Administrator to be used for the Appellate Process Support and Court Programs Fund. The State objected on the basis that ordering defendant to pay to this fund was in direct contravention of La. R.S. 15:571.11(D) which, at that time, provided that all fines and forfeitures imposed in criminal cases in Orleans Parish be paid to the Orleans Parish District Attorney. The Louisiana Supreme Court ruled that the “donation” was a fine, subject to the legislative mandate of La. R.S. 15:571.11(D) that it be paid to the Orleans Parish District Attorney. The court annulled the sentence insofar as it ordered that the payment be made to the Judicial Administrator and remanded the case for correction of the sentence by making the fine payable to the District Attorney.
hiJn the instant case, the only statutory authority under which the trial court could require payment of the $800.00 assessment was either (1) La.C.Cr.P. art. 895.1(B)(2), pursuant to which payment of the $800.00 could be required as a fine or condition of probation, with the funds being paid to, among others, the Criminal Court Fund; or (2) La. R.S. 13:1381.4, pursuant to which payment of the $800.00 could be required as costs, with such costs being paid to the judicial administrator, for deposit into the Judicial Expense Fund. The trial court did not assess costs and specifically ordered that defendant pay the $800.00 as a fine. Accordingly, the trial court erred in directing payment of the $800.00 to the Judicial Expense Fund instead of the Criminal Court Fund as provided by that statute.
Therefore, we vacate defendant’s sentence and set it aside insofar as it directs payment of the $800.00 to the Judicial Expense Fund, and remand this case to the trial court for correction of the sentence by requiring the payment to the Criminal Court Fund.

ASSIGNMENT OF ERROR NUMBER 3:

Defendant argues that his sentence is excessive because the trial court failed to adequately consider the sentencing guidelines pursuant to La.C.Cr.P. art. 894.1. Specifically, he asserts that nothing in the record reflected that he had a prior criminal history.
In State v. Smith, 2001-2574, pp. 6-7 (La.1/14/03), 839 So.2d 1, 4, the Louisiana Supreme Court set forth the standard for evaluating a claim of excessive sentencing:
Louisiana Constitution of 1974, art. I, § 20 provides, in pertinent part, that “[n]o law shall subject any person to ... excessive ... punishment.” (Emphasis added.) Although | iaa sentence is within statutory limits, it can be reviewed for constitutional excessiveness. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). A sentence is unconstitutionally excessive when it imposes punishment grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355, 357 (La.1980). A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. State v. Cann, 471 So.2d 701, 703 (La.1985). On appellate review of a sentence, the relevant question is not whether another sentence might have *311 been more appropriate but whether the trial court abused its broad sentencing discretion. State v. Walker, 00-3200, p. 2 (La.10/12/01), 799 So.2d 461, 462; cf. State v. Phillips, 02-0787, p. 1 (La.11/15/02), 831 So.2d 905, 906. See also State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672; State v. Baxley, 94-2982 (La.5/22/95), 656 So.2d 973; State v. Batiste, 06-0875 (La.App. 4 Cir. 12/20/06), 947 So.2d 810; State v. Landry, 03-1671 (La.App. 4 Cir. 3/31/04), 871 So.2d 1235.
Id., p. 7, 839 So.2d at 4.
In State v. Batiste, 2006-0875 (La.App. 4 Cir. 12/20/06), 947 So.2d 810, this Court further stated:
An appellate court reviewing a claim of excessive sentence must determine whether the trial court adequately complied with the statutory guidelines in La.C.Cr.P. art. 894.1, as well as whether the facts of the case warrant the sentence imposed. State v. Landry, supra; State v. Trepagnier, 97-2427 (La.App. 4 Cir. 9/15/99), 744 So.2d 181. However, as noted in State v. Major, 96-1214, p. 10 (La.App. 4 Cir. 3/4/98), 708 So.2d 813:
The articulation of the factual basis for a sentence is the goal of Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, resen-tencing is unnecessary even when there has not been full compliance with Art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La.C.Cr.P. art. 881.4(D).
114If the reviewing court finds adequate compliance with art. 894.1, it must then determine whether the sentence the trial court imposed is too severe in light of the particular defendant as well as the circumstances of the case, “keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged.” State v. Landry, 2003-1671 at p. 8, 871 So.2d at 1239. See also State v. Bonicard, 98-0665 (La.App. 4 Cir. 8/4/99), 752 So.2d 184. (Emphasis added).
06-0875, p. 18, 947 So.2d at 820.
A conviction of unauthorized entry of an inhabited dwelling carries a maximum sentence of six years, with or without hard labor, and the possibility of a one thousand dollar fíne. La. R.S. 14:62.3. Defendant was sentenced to serve three years at hard labor. His sentence was suspended, and defendant was placed on two years active probation with fines and fees. Similar sentences have been upheld by the appellate courts.
In State v. Coleman, 2002-1000 (La.App. 4 Cir. 9/25/02), 828 So.2d 1130, the defendant was convicted of unauthorized entry of an inhabited dwelling and received a four year sentence at hard labor.
In State v. Shannon, 2004-1361 (La. App. 5 Cir. 4/26/05), 902 So.2d 519, the defendant was sentenced to two years at hard labor with all but six months suspended for unauthorized entry of an inhabited dwelling.
In State v. Williams, 32,993 (La.App. 2 Cir. 3/1/00), 754 So.2d 418, the defendant’s five year sentence was affirmed even in the absence of a prior criminal record.
We find defendant’s sentence is supported by the violent manner in which he kicked open the victim’s door, grabbed her, pulled her out of her bed, and injured her arm and neck. Furthermore, defendant was charged with home | l5invasion. If convicted, he could have received a sentence of five to twenty-five years at hard labor with at least the first five years served *312 without benefit of parole, probation or suspension of sentence. See La. R.S. 14:62.8.
Based on the facts and jurisprudence, defendant’s sentence is not excessive. This assignment of error is without merit.

CONCLUSION:

For the foregoing reasons we affirm defendant’s conviction; vacate his sentence only insofar as it directs payment of $800.00 to the Judicial Expense Fund; and remand the case with instructions to correct the sentence by ordering that the $800.00 fine imposed be payable to the Criminal Court Fund in accordance with La.C.Cr.P. art. 895.1(B)(2).
CONVICTION AFFIRMED; SENTENCE VACATED IN PART; REMANDED.

. For a disturbing discussion of the problem of recanting victims in domestic violence cases see: Njeri Mathis Rutledge, Turning a Blind. Eye: Perjury in Domestic Violence Cases, 39 N.M.L.Rev. 149 (2009).

. There is a discrepancy in the record as to the characterization of the financial assessment as a fine or a fee. The minutes of October 29, 2007, reflect that defendant was ordered to pay fines and fees in the amount of $800.00 to the Judicial Expense Fund. The transcript of defendant’s sentencing reflects that the $800.00 assessment was ordered to be paid as a fine to the Judicial Expense Fund. If the assessment is for additional costs, then the payment should be made to the judicial administrator for deposit in the Judicial Expense Fund. If the assessment is a condition of probation or is a fine, it should be paid to the criminal court fund. When there is a discrepancy between the minute entry and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732 (La.1983). Accordingly we treat the assessment as a fine, not a fee, and the proper recipient should be the Criminal Court Fund.