| STATE OF LOUISIANA | * | NO. 2019-KA-0381 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| DOLAN MCGINNIS | * | |
| | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *


APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 540-937, SECTION "B"
Honorable Tracey Flemings-Davillier, Judge
* * * * * *
**Judge Terri F. Love**
* * * * * *
(Court composed of Judge Terri F. Love, Judge Daniel L. Dysart, Judge Paula A. Brown)

Leon Cannizzaro
District Attorney
Irena Zajickova
Assistant District Attorney
DISTRICT ATTORNEY'S OFFICE
ORLEANS PARISH
619 S. White Street
New Orleans, LA 70119

     COUNSEL FOR STATE OF LOUISIANA/APPELLEE

Bruce G. Whittaker
LOUISIANA APPELLATE PROJECT
1215 Prytania Street, Suite 332
New Orleans, LA 70130-4357

     COUNSEL FOR DEFENDANT/APPELLANT

**CONVICTIONS AFFIRMED; SENTENCE VACATED;
REMANDED FOR RESENTENCING
MARCH 11, 2020**

Defendant Dolan McGinnis ("Mr. McGinnis") seeks appellate review of his convictions and sentences for domestic abuse battery by strangulation, domestic abuse battery, and false imprisonment. On appellate review, we find the evidence presented at trial was sufficient to establish Mr. McGinnis' guilt on all charges. However, following the trial court's denial of Mr. McGinnis' supplemental motion for new trial, the trial court failed to observe the 24-hour time delay before sentencing Mr. McGinnis. Therefore, we affirm Mr. McGinnis' convictions, vacate his sentence, and remand the matter for resentencing.

## *PROCEDURAL HISTORY AND FACTUAL BACKGROUND*

Rhonda Mitchell testified at trial that in 2017 she was engaged to Mr. McGinnis, and they lived together when the domestic abuse transpired. She testified as to two specific incidents of abuse that occurred in November and December 2017.

In late November 2017, Mr. McGinnis picked up Ms. Mitchell from work, when the two got into an argument in the car. Mr. McGinnis began hitting her on

the left side of her face multiple times. Ms. Mitchell stated that as Mr. McGinnis' vehicle slowed down as it neared a drug store, she jumped out of the car and took refuge in the store. Once inside, she used a phone to call her friend Demetrice Hutson ("Ms. Hutson") to pick her up from the store.

Ms. Hutson testified that she and the victim Ms. Mitchell were best friends and that at the time of the November incident she was living with Ms. Mitchell and Mr. McGinnis. She recalled that she was at home with her daughter when she received Ms. Mitchell's call. She stated that when she arrived and saw the victim, she could see Ms. Mitchell was hurt and asked her what happened. Ms. Mitchell informed her that Mr. McGinnis had hit her and that she jumped out of the car and scraped her face on the pavement.

At some point after Ms. Hutson retrieved Ms. Mitchell from the drug store, Ms. Mitchell called 911. She identified herself as the victim of physical domestic abuse and that Mr. McGinnis was the perpetrator. She explained that she did not need medical attention but wanted a police officer to meet her at her home to ensure her safety. When no police unit was forthcoming, Ms. Mitchell grew frustrated and upset. Ms. Mitchell called a second time and explained that she was sitting in her car outside her home, still waiting on the police. Eventually, Ms. Mitchell and Ms. Hutson went to the police station where she reported the incident to officers, explaining that they wanted officers to accompany them to the house to ensure their safety while they pack their belongings so that they could stay elsewhere. At trial, Ms. Hutson identified photographs that depicted Ms.

2

Mitchell's appearance following the November incident.

Officer Marion Mickey ("Officer Mickey") of the New Orleans Police Department testified that she investigated both instances of domestic abuse reported by Ms. Mitchell. She stated that in November 2017 she, along with other officers, accompanied Ms. Mitchell to her residence to make sure the perpetrator of the abuse was not at the home. Body camera footage from the November investigation was played for the jury. The footage showed Ms. Mitchell sitting in her car outside of the police station explaining to officers she needed a police escort to her home to pack her belongings and leave the vicinity. Ms. Mitchell showed the investigating officers the injuries she suffered when she jumped out of the moving vehicle to escape further attack by Mr. McGinnis. She showed officers injuries to her knee, arm, and an abrasion on the right side of her face. Injuries to the left side of her face were the direct result of Mr. McGinnis' attack; whereas, the other injuries were the result of her jumping from the vehicle to escape Mr. McGinnis.

After the November 2017 incident, Ms. Mitchell explained that she forgave Mr. McGinnis. Although she forgave him, Mr. McGinnis strangled her a month later that resulted in her presenting to the emergency room to receive treatment for her injuries.

In December 2017, Ms. Mitchell was asleep when, around 7:00 a.m., Mr. McGinnis kicked their bedroom door in and ordered her to take off her clothes. According to Ms. Mitchell, Mr. McGinnis then started hitting her and tossing her

around the room, threatening to kill her if she tried to leave the room. At one point, Mr. McGinnis grabbed her and "began to choke [her] from behind," cutting off her ability to breathe. Mr. McGinnis eventually carried her to a mirror so he could show her, as she explained at trial, "how I look and what I make him look like to people and how I make us look."

After choking Ms. Mitchell, Mr. McGinnis proceeded to question Ms. Mitchell about text messages on her phone. She stated that when she provided an answer that Mr. McGinnis did not like he would hit her again. At approximately 5:30 p.m., when her face was extremely swollen, Ms. Mitchell asked if she could go downstairs to get some ice. Once downstairs, Ms. Mitchell was able to escape and call her mother for assistance, who brought her to New Orleans East Hospital to receive treatment for her injuries.

Geraldine Mitchell, the victim's mother, testified that, in December 2017, she received a call from her daughter at approximately 6:30 p.m. Her daughter asked her to come get her because Mr. McGinnis had beaten her. At trial, the victim's mother was asked to describe how her daughter looked when she picked her up. Geraldine Mitchell stated, "her face was all swollen. She had a hickey on her head. Her eyes [were] red and black underneath." After picking her daughter up, she testified that Mr. McGinnis called Ms. Mitchell to apologize for beating her, indicating that he did not mean to do it.

The victim's friend Ms. Hutson also testified with respect to the December 2017 incident. She stated that she first saw Ms. Mitchell at her mother's house and

4

travelled with Ms. Mitchell to the hospital. She described the victim's face as "really, really bruised up," and both her eyes and lips were swollen. Ms. Hutson testified that Ms. Mitchell explained to her that Mr. McGinnis had beaten her. At trial, she identified photographs taken of Ms. Mitchell and her injuries a few days after the December 2017 incident. On cross-examination, Ms. Hutson admitted that she never saw Mr. McGinnis hit the victim. Additionally, she stated that the victim told her that the injuries she sustained in the November 2017 incident were the result of her jumping out of the car.

After presenting to the emergency room and indicating to hospital personnel that she was the victim of domestic abuse, an emergency room nurse called 911. The nurse indicated in the call that the victim reported that her fiancé had beaten her with his fists multiple times that day. The nurse further stated that Ms. Mitchell had suffered significant facial injuries but did not want to speculate as to the extent of her injuries until tests were performed.

Dr. Stanford White ("Dr. White") testified that he was Ms. Mitchell's treating physician on the day she presented to the emergency room with injuries. Dr. White testified that Ms. Mitchell suffered "contusions or bruises" along with "subconjunctival hemorrhage." He explained that hemorrhages "are pretty much a breakdown in blood vessels, small blood vessels" caused, in this case, by trauma. He stated that Ms. Mitchell had swelling around the eyes and facial swelling. At trial, Dr. White was asked if Ms. Mitchell suffered any symptoms of strangulation and was shown photographs of Ms. Mitchell's face and neck. He confirmed the

5

pictures depicted the injuries he evaluated on Ms. Mitchell the day she presented for treatment. He admitted on cross-examination that he did not note any injuries to the victim's neck, and made no notation that the victim reported being strangled. Further, he indicated that Ms. Mitchell made no complaint of dizziness, headaches, fainting, problems urinating, or swallowing. However, Dr. White opined that such complaints did not necessarily correlate with strangulation.

Dr. White testified that the symptoms he observed in the victim reflected that she had undergone "some type of trauma." He further stated that Ms. Mitchell's complaint, on the date he examined her, was that she had been assaulted by her boyfriend. Moreover, Dr. White opined that the photograph of Ms. Mitchell, specifically, the discoloration of her neck, reflected that she had suffered some trauma to her neck. He opined that generally, a victim will suffer a fracture of a neck bone if he or she has been the victim of a strangulation. However, strangulation would likely not cause a victim to suffer a fracture of the skull.

On the date of the December 2017 incident, Officer Mickey arrived at the hospital to investigate the report of domestic abuse. Officer Mickey observed extensive facial injuries on Ms. Mitchell, including numerous bruises, swollen chin area, and the whites of her eyes were red or "blood pooled." Officer Mickey also observed "red marks" on the victim's shoulder blades, "marks" on her forearms, and bruising on her legs. Officer Mickey testified that Ms. Mitchell complained of "general body pain everywhere." At trial, Officer Mickey identified photographs she had taken of the victim which were introduced into evidence along with body

6

camera footage taken. The video showed Ms. Mitchell in her hospital gown with extensive swelling of her face. In her interview with Officer Mickey, Ms. Mitchell stated that Mr. McGinnis hit her on her face, on her body, "everywhere he could hit [her]." When Officer Mickey asked whether Mr. McGinnis choked her, Ms. Mitchell answered in the affirmative. Ms. Mitchell explained that rather than choking her from the front by placing his hands around her throat, Mr. McGinnis choked her from the side or the back by placing his arm around her neck. Ms. Mitchell stated that she did not "pass out" but that she was unable to "breathe for a little while."

At trial, Officer Mickey discussed the signs associated with someone being choked. She stated that officers look for scratches, discoloration, hoarseness, vomiting, "petechiae in the eyes," explaining that the "eyes fill with blood from I guess the lack of oxygen." Officer Mickey testified that not everyone who is choked displays these signs; however, in this case, Officer Mickey observed signs that corroborated the victim's statement that she was choked. Officer Mickey explained that Ms. Mitchell complained that her neck hurt and that she had "blood[-]filled eyes." In her report, Officer Mickey noted that Ms. Mitchell "had red marks and bruises over her body." She did not document any specific strangulation indicators. Nevertheless, she testified that Ms. Mitchell had been choked as she saw Ms. Mitchell had "redness to her shoulder blade area" and "red bloodshot eyes." Officer Mickey stated that after she finished her interview with Ms. Mitchell, she left the hospital and went to the victim's home in search of Mr.

7

McGinnis.

Based on the foregoing events and police investigation, an arrest warrant was issued. In April 2018, the State filed a bill of information charging Mr. McGinnis with one felony count of domestic abuse battery by strangulation, in violation of La. R.S. 14:35.3(L); one misdemeanor count of domestic abuse battery, in violation of La. R.S. 14:35.3; and one misdemeanor count of false imprisonment, in violation of La. R.S. 14:46. In May 2018, Mr. McGinnis was arraigned and enter pleas of not guilty. In December 2018, a jury found Mr. McGinnis guilty of the felony charge of domestic abuse battery by strangulation, and the trial judge found Mr. McGinnis guilty of the misdemeanor charges of domestic abuse battery and false imprisonment.

Mr. McGinnis filed motions for new trial and judgment of acquittal, which the trial court denied. Thereafter, Mr. McGinnis filed a supplemental motion for new trial based on new evidence. The trial court denied the motion, finding the motion to be repetitious, at which point, the trial court proceeded with sentencing, providing:

> Given the evidence that was presented at trial, the court sentences you on the false imprisonment, which is a misdemeanor to six months. The court sentences you [as] to the domestic abuse battery, which is a misdemeanor to six months, and [the] court sentences you as to the domestic abuse battery involving strangulation, which is a felony to three years, and that's to the department of public safety and corrections all with credit for time served, and those sentences are to run concurrent with one another.

In January 2019, Mr. McGinnis filed a motion to reconsider sentence, which the trial court later denied. Mr. McGinnis timely files this appeal seeking appellate

review of his convictions and sentences.

## DISCUSSION

### *Sufficiency of the Evidence*

In both the brief submitted by counsel and in his *pro se* brief, Mr. McGinnis argues that the State introduced insufficient evidence to support his conviction on the charge of domestic abuse battery by strangulation. Specifically, Mr. McGinnis contends that domestic abuse battery by strangulation is a specific intent crime rather than a general intent crime, and the evidence did not prove that he specifically intended to strangle the victim.

Contrary to Mr. McGinnis' assertion, domestic abuse battery by strangulation is, in fact, a general criminal intent crime. La. R.S. 14:33 defines battery, in pertinent part, as "the intentional use of force or violence upon the person of another." La. R.S. 14:35.3(L) defines domestic abuse battery involving strangulation, in pertinent part, as follows:

> A. Domestic abuse battery is the intentional use of force or violence committed by one household member or family member upon the person of another household member or family member.
>
> B. For purposes of this Section:
>
>       *     *     *
>
> (7) "Strangulation" means intentionally impeding the normal breathing or circulation of the blood by applying pressure on the throat or neck or by blocking the nose or mouth of the victim.

Under La. R.S. 14:10, criminal intent is classified as being either specific or general. "Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Conversely, "[g]eneral criminal intent is present whenever there is specific intent, and also

when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." La. R.S. 14:10(2). La. R.S. 14:11 provides that "in the absence of qualifying provisions, the terms 'intent' and 'intentional' have reference to 'general criminal intent.'"

There is no language in La. R.S. 14:35.3(L) which suggests the crime should be treated differently than other battery crimes. Both domestic abuse battery by strangulation and aggravated battery require the **intentional** use of force or violence. There are no qualifying provisions in the statutes; thus, under the provisions of La. R.S. 14:11, the term "intentional" refers to "general criminal intent." Further, jurisprudence clearly provides that the crime of aggravated battery is a general criminal intent crime. *See State v. Howard,* 638 So.2d 216, 217 (La. 1994) (per curiam) (the offense of aggravated battery "requires proof only of general intent, or a showing that 'the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act'") (citations omitted); *State v. Wix,* 02-1493, p. 9 (La. App. 4 Cir. 1/15/03), 838 So.2d 41, 47 (finding "[a]ggravated battery is a crime of general intent"). In the absence of law suggesting that domestic abuse battery by strangulation should be interpreted differently than aggravated battery, for purposes of determining the intent necessary to procure a conviction, a finding that domestic abuse battery by strangulation is a general criminal intent crime is warranted.

Under *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), when analyzing the sufficiency of evidence, the reviewing court must view the evidence in the light most favorable to the prosecution and

10

analyze whether any rational trier of fact could have found that the State proved its case beyond a reasonable doubt. *State v. Brown*, 03-0897, p. 18 (La. 4/12/05), 907 So.2d 1, 22. "[T]he rational credibility determinations of the trier of fact are not to be second guessed by a reviewing court." *State v. Williams*, 11-0414, p. 18 (La. App. 4 Cir. 2/29/12), 85 So.3d 759, 771. The existence of conflicting statements as to factual matters affects the weight of the evidence, not its sufficiency, and such a determination rests solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witness. *State v. Wells,* 10-1338, p. 5 (La. App. 4 Cir. 3/30/11), 64 So.3d 303, 306. "The testimony of a single witness, if believed by the trier of fact, is sufficient to support a conviction." *Id.,* 10-1338, p. 5, 64 So.3d at 306. On appeal, a reviewing court must consider the record as a whole, as that is what a rational trier of fact would do. *State v. Santinac*, 99-0782, p. 6 (La. App. 4 Cir. 6/14/00), 765 So.2d 1133, 1137.

Mr. McGinnis contends the facts in this case do not give rise to a finding that he strangled Ms. Mitchell because even though he wrapped his arm around her neck, he did not intend to impede her breath or blood flow; instead, he was merely trying to restrain or control Ms. Mitchell. Additionally, in his *pro se* brief, Mr. McGinnis avers that the evidence was insufficient to support a finding of strangulation because "there was no evidence of the victim losing consciousness, not breathing, requiring medical assistances [sic], or intentional impeding of the breathing." According to Mr. McGinnis, if he had intended to stop Ms. Mitchell from breathing or stop her blood circulation, she would have vehemently complained that she had been choked rather than expressing her distress in a "by the way" manner. Specifically, Mr. McGinnis asserts that "the 'by the way' manner in which the issue was broached with the officer on the body cam video

11

suggests strongly that the restriction of airflow, if any, was mere happenstance in the confusion of the physical altercation."

Mr. McGinnis' description of how Ms. Mitchell reported the distress she experienced as a result of his stranglehold on her is in direct conflict with Ms. Mitchell's testimony and does not accurately reflect what is depicted on the body camera video. Additionally, contrary to Mr. McGinnis' assertion, Ms. Mitchell required medical assistance. She went to the emergency room at New Orleans East Hospital to have her injuries treated. Ms. Mitchell testified that she told "pretty much everybody" she came into contact with, that Mr. McGinnis choked and punched her. Further, her appearance when she presented to the hospital for treatment suggested Ms. Mitchell experienced trauma. Her face was swollen, her eyes were bloodshot, and her neck was discolored. Likewise, on the body camera footage, Officer Mickey asked Ms. Mitchell whether she had been choked and, without hesitation, Ms. Mitchell answered in the affirmative, demonstrating exactly how Mr. McGinnis choked her. Considering the pervasiveness of Ms. Mitchell's injuries from Mr. McGinnis' continual punching, a juror could conclude that it was reasonable that Ms. Mitchell did not first mention the strangulation incident at the time she spoke with Officer Mickey. Nevertheless, the fact that she did not immediately report the choking to Officer Mickey and the fact that she did not lose consciousness, do not evidence a "by the way" complaint.

Mr. McGinnis also notes that Officer Mickey did not include Ms. Mitchell's strangulation complaint in her report, and Dr. White, while noting a purplish hue to the right side of Ms. Mitchell's neck, failed to specifically include in his medical report that the discoloration was caused by strangulation. We find Officer Mickey's failure to include the victim's strangulation complaint insignificant. The

body camera footage, played for the jury, depicted Officer Mickey's interview with Ms. Mitchell and reflects that Ms. Mitchell reported the choking incident. Likewise, it is insignificant that Dr. White could not, with medical certainty, attribute the discoloration of Ms. Mitchell's neck to strangulation. Ms. Mitchell's unrefuted testimony was that she was strangled. As stated earlier, "[t]estimony of a single witness, if believed by the trier of fact, is sufficient to support a conviction." *Wells*, 10-1338, p. 5, 64 So.3d at 306. Thus, Ms. Mitchell's testimony alone would have been sufficient to support the jury's verdict. Nevertheless, in this case, Ms. Mitchell's testimony was corroborated by the photographic evidence and body camera footage, presented to the jury, depicting the discoloration of her neck. Additional corroboration, in the form of an expert medical opinion, was unnecessary. Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that Mr. McGinnis strangled Ms. Mitchell.

In his *pro se* brief, Mr. McGinnis also challenges the sufficiency of the evidence to support his misdemeanor convictions for domestic abuse battery and false imprisonment.[1] He argues that no evidence was submitted that Ms. Mitchell was either battered or detained "without her consent." While Ms. Mitchell may not have testified that Mr. McGinnis repeatedly hit her without her consent, and detained her without her consent, Ms. Mitchell's involuntary presence was understood. Ms. Mitchell's desire to leave the situation was evidenced by her escape as soon as Mr. McGinnis allowed her to leave the room to obtain ice to

---

[1] While misdemeanor convictions are not appealable, we address the sufficiency claim out of an abundance of caution. *See State v. Earl*, 18-0976, p. 2 (La. App. 4 Cir. 12/5/18), 259 So.3d 1105, 1107 (quoting *State v. Gaubert*, 15-0774, p. 6 (La. App. 4 Cir. 12/9/15), 179 So.3d 982, 987) (noting there is no right to an appeal from a misdemeanor conviction).

place on her battered, swollen face.

*Admissibility of Evidence*

Mr. McGinnis also asserts in his *pro se* brief certain errors as it pertains to the evidence presented at trial. First, Mr. McGinnis avers that he was denied a fair trial "[b]ecause of the trial court's denial of the introduction of the body camera recording." Mr. McGinnis, however, fails to specify the body camera video recording to which he is referring. The record does not indicate that defense moved to introduce body camera footage into evidence or that such a motion was unsuccessful. The only body camera footage admitted into evidence are the videos associated with the November and December incidents, which were admitted in their entirety. Therefore, Mr. McGinnis' claim that he was deprived a fair trial because unidentified video evidence was excluded at trial is unsupported.

Mr. McGinnis next challenges the admissibility of photographs that were not taken by police officer and medical staff. He claims that the photographs, which Ms. Mitchell, her family, and/or friends took, are "tainted" evidence, giving rise to hearsay testimony. According to Mr. McGinnis, the State did not prove beyond a reasonable doubt that he caused the injuries Ms. Mitchell sustained during the November 2017 altercation. Mainly, Mr. McGinnis claims that the State failed to present evidence which excluded the possibility that Ms. Mitchell's injuries were self-inflicted when she jumped from a moving vehicle. Mr. McGinnis claims that the only evidence presented to prove he caused Ms. Mitchell's injuries was hearsay evidence. Mr. McGinnis contends the State's witnesses could only offer "a narration" of what Ms. Mitchell had told them—that Mr. McGinnis caused her injuries.

"An irregularity or error cannot be complained of after verdict unless it was

14

objected to at the time of occurrence. La. C.Cr.P. art. 841. … The defense is limited on appeal to those grounds articulated at trial." *State v. Keys*, 12-1177, p. 13 (La. App. 4 Cir. 9/4/13), 125 So.3d 19, 31 (citation omitted). Mr. McGinnis did not object to any hearsay testimony that indicated he caused Ms. Mitchell's injuries. Therefore, Mr. McGinnis waived his right, on appeal, to challenge the admissibility of such testimony. Further, any error in that regard was harmless given the victim herself offered unrefuted testimony that Mr. McGinnis attacked her, causing significant injuries to her face and body. We find no merit to this assigned error.

Similarly, Mr. McGinnis did not object to the admission of the photographs on grounds that they were not taken by police officers or medical personnel. Thus, Mr. McGinnis did not preserve the issue on appeal. Even still, the photographs to which Mr. McGinnis raised an unrelated objection were identified as photographs Ms. Mitchell's friend took prior to the December 2017 incident. Ms. Hutson testified that she took the photographs and that they depicted the injuries Ms. Mitchell sustained "when she jumped out of the car." No impression was given to the jury that Mr. McGinnis directly caused the injuries depicted in the photographs.

Finally, contrary to Mr. McGinnis' suggestion, there was ample evidence to show the injuries Ms. Mitchell suffered at the hands of Mr. McGinnis. The December 2017 photographs that Office Mickey took of Ms. Mitchell at the hospital depict the severity of Ms. Mitchell's injuries including acute bruising, profound swelling of the face, and bloodshot eyes. The strongest evidence came from the victim herself, whose unrefuted testimony established that the December 2017 injuries were brought about by Mr. McGinnis' actions. We therefore find this claim without merit.

15

Based on evidence presented at trial, we find that any rational trier of fact could have found that the State proved its case beyond a reasonable doubt. Therefore, we find the evidence is sufficient to support Mr. McGinnis' convictions.

*Excessive Sentence*

Moreover, Mr. McGinnis argues that the maximum three-year sentence imposed in connection with his conviction for domestic abuse battery by strangulation is excessive. In support, Mr. McGinnis notes that he is a first-time offender with "a history of steady employment as a nurse. . . ." He also claims that receiving the maximum sentence is excessive because: (1) Ms. Mitchell "only parenthetically" complained about Mr. McGinnis choking her; (2) Ms. Mitchell's breathing was restricted for only a short period of time; and (3) Dr. White, the treating physician, failed to corroborate Ms. Mitchell's testimony that she was strangled.

In determining sentences, the trial judge is afforded wide discretion, "and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed." *State v. Williams*, 15-0866, p. 12-13 (La. App. 4 Cir. 1/20/16), 186 So.3d 242, 250; La. C.Cr.P. art. 881.4(D). Both the Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive and cruel punishment. *State v. Wilson*, 14-1267, p. 23 (La. App. 4 Cir. 4/29/15), 165 So.3d 1150, 1165. A sentence is excessive, even when it is within the applicable statutory range, if it is "'grossly disproportionate to the seriousness of the offense or imposes needless and purposeless pain and suffering.'" *Id.*, 14-1267, p. 25, 165 So.3d at 1166 (quoting *State v. Hackett*, 13-0178, p. 14 (La. App. 4 Cir. 8/21/13), 122 So.3d 1164, 1174). "In reviewing a sentence for excessiveness, the appellate court must

consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the court's sense of justice." *State v. Bradley,* 18-0734, p. 8 (La. App. 4 Cir. 5/15/19), 272 So.3d 94, 100.

The relevant question on appellate review is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion. *Hackett*, 13-0178, p. 14, 122 So.3d at 1174. This Court "must determine whether the trial judge has adequately complied with statutory guidelines in La. C.Cr.P. art. 894.1," and whether the sentence is warranted under the facts established by the record. *State v. Boudreaux*, 11-1345, p. 5 (La. App. 4 Cir. 7/25/12), 98 So.3d 881, 885. "The articulation of the factual basis for a sentence is the goal of Article 894.1, not rigid or mechanical compliance with its provisions." *State v. Gibson*, 15-1390, p. 10 (La. App. 4 Cir. 7/6/15), 197 So.3d 692, 699. "Where the record clearly shows an adequate factual basis for the sentence imposed, resentencing is unnecessary even when there has not been full compliance with Article 894.1." *Id.*

As reflected in the sentencing transcript, the trial court heard victim impact statements from Ms. Mitchell, the victim, as well as her mother. Both attested to how Mr. McGinnis' actions "severely affected" their lives. Ms. Mitchell described the immediate aftermath as a "very hard time" and that she was required to miss work so that her injuries could heal. She also testified to the lasting effects of the abuse in that she has required counseling, describing herself as "very broken."

Although Mr. McGinnis does not have any prior convictions, the evidence showed that he held Ms. Mitchell captive for approximately ten hours, repeatedly beating her and wrapping his arm around her neck, restricting her airway. As the photographs Officer Mickey took reflect, Mr. McGinnis pummeled Ms. Mitchell's

17

face causing grave bruising and swelling. Ms. Mitchell was disfigured as a result of Mr. McGinnis' prolonged beating. Thus, the injuries Ms. Mitchell sustained could have justified a charge of second degree battery, a violation of La. R.S. 14.34.1, which carries a maximum sentence of eight years imprisonment.[2]

Ms. Mitchell testified that Mr. McGinnis strangled her. The purple hue and discoloration seen on her neck supported her testimony. The fact that the pressure Mr. McGinnis exerted on Ms. Mitchell's neck did not result in her losing consciousness does not absolve Mr. McGinnis of guilt; nor does the fact that when Ms. Mitchell reported the altercation to Officer Mickey, she did not begin with her strangulation complaint. Ms. Mitchell suffered a traumatic beating. That Ms. Mitchell's first complaint related to the pain associated with the beating, does not excuse Mr. McGinnis from having choked her. Additionally, Dr. White's inability to categorically state that Ms. Mitchell was strangled is insignificant because Ms. Mitchell was able to testify as to her experience and that Mr. McGinnis did, in fact, strangle her.

In light of the evidence presented at trial, we find the trial court's imposition of the maximum three-year sentence is not so grossly disproportionate to the seriousness of the offense that it shocks the court's sense of justice. Even so, this Court's review of Mr. McGinnis' case revealed two sentencing errors, one of which requires a remand to the trial court for resentencing.

### *Errors Patent*

The trial court committed a patent error when it failed to observe the time delays for sentencing. On December 17, 2018, the trial court denied Mr.

---

[2] Second degree battery is defined as "a battery when the offender intentionally inflicts serious bodily injury. . . ." La. R.S. 14:34.1(A). "[S]erious bodily injury is defined, in pertinent part, as bodily injury which involves "protracted and obvious disfigurement."

McGinnis' original motion for new trial. Subsequently, on December 20, 2018, Mr. McGinnis filed a supplemental motion for new trial based on new evidence. The trial court denied Mr. McGinnis' supplemental motion, finding the motion was "repetitious." On the same date, the trial court sentenced Mr. McGinnis. A review of Mr. McGinnis' original motion for trial and his supplemental motion demonstrates that the supplemental motion was not repetitious, but rather, set forth new grounds for relief.

La. C.Cr.P. art. 873 provides, in pertinent part, "[i]f a motion for new trial…is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately." The Louisiana Supreme Court has held that where a defendant has not expressly waived the 24-hour time delay, the trial court's failure to observe the delay is grounds for voiding the sentence if the defendant challenges the penalty imposed. *State v. Augustine*, 555 So.2d 1331, 1333-1334 (La. 1990); *see also State v. Francis*, 19-0227 (La. App. 4 Cir. 4/29/19), 268 So.3d 289 (per curiam) (finding defendant did not waive delay and therefore, the error in failing to observe the time delay was not harmless because defendant challenged his sentence).

In this case, the trial court failed to observe the statutorily-mandated 24-hour delay, following its denial of Mr. McGinnis' supplemental motion for new trial. Further, there is also no indication in the record that Mr. McGinnis waived the 24-hour time delay required by La. C.Cr.P. art. 873. In that Mr. McGinnis also challenges the penalty imposed in this case, the trial court's error was not harmless. Therefore, we vacate the sentence imposed and remand the matter for

resentencing.[3]

*DECREE*

We find the evidence presented at trial was sufficient to establish Mr. McGinnis' guilt. However, following the trial court's denial of Mr. McGinnis' supplemental motion for new trial, the trial court failed to observe the 24-hour time delay before sentencing Mr. McGinnis. Therefore, we affirm Mr. McGinnis' convictions, vacate his sentence, and remand the matter for resentencing.

**CONVICTIONS AFFIRMED; SENTENCE VACATED;
REMANDED FOR RESENTENCING**

---

[3] We note the trial court committed a second patent error in connection with Mr. McGinnis' misdemeanor conviction for domestic abuse battery. La. R.S. 14:35.3 requires a person convicted of the offense shall be sentenced to not more than six months imprisonment and shall be fined "not less than three hundred dollars nor more than one thousand dollars." The trial court committed patent error when it sentenced Mr. McGinnis to six months imprisonment without imposing the statutorily-mandated fine. Thus, the sentence imposed is illegally lenient. However, "'there is no right of appeal from a misdemeanor conviction.'" *Earl*, 18-0976, p. 2 (La. App. 4 Cir. 12/5/18), 259 So.3d 1105, 1107 (quoting *State v. Gaubert*, 15-0774, p. 6 (La. App. 4 Cir. 12/9/15), 179 So.3d 982, 987). Therefore, this Court lacks jurisdiction to order the matter corrected on remand.